LEANNAH, Respondent, vs. CITY OF GREEN BAY, Appellant.

*February 7—March 6, 1923.*

Drawbridges: Absence of guards or gates: Sufficiency of signals when bridge is raised: Evidence: Questions for jury: Municipalities: Duty to maintain bridge in safe condition for travel: Negligence of bridge-tender: Liability of municipality.

1. Where a pedestrian with defective eyesight and unfamiliar with the surroundings proceeded to cross a bascule bridge, and as soon as he got on the bridge the tender commenced to raise it, the question whether the pedestrian, in deciding to jump when the bridge had been raised about four feet rather than to be carried more than 100 feet in the air and take the chance of being thrown into the river, was negligent, was for the jury. *Stephani v. Manitowoc*, 101 Wis. 59, distinguished.

2. In an action for injuries so sustained, the jury, in considering whether the system of bells and gongs used as warnings was sufficient, might consider whether the signals given by the

bells could be easily confused with those given by other bells in the vicinity, and whether they indicated the point of danger and the points of demarcation of the draw.

3. The bridge, including the draw, being an essential and integral part of the street, it was the duty of the city to maintain it in a reasonably safe condition for travelers using ordinary care.

4. A city is not liable for injuries to a pedestrian solely caused by the failure of a bridge-tender to give proper warning or signals of the lifting of the bridge, the operation of the bridge being a governmental and not a municipal function.

APPEAL from a judgment of the municipal court of Brown county: N. J. MONAHAN, Judge. *Affirmed.*

Action to recover for personal injuries sustained by plaintiff as a result of jumping from a drawbridge operated by the city of *Green Bay.* The bridge in question is located on Mason street and spans the Fox river. It is of the bascule type, there being a portion 115 feet long which is raised by means of an electrically operated counterweight located at its eastern end.

The negligence charged in the complaint was, in substance, that the bridge was insecure and unsafe for the passage of pedestrians for the reason that there were no gates or barriers at either end to prevent people from walking upon the bridge when it was about to be raised; that no watchmen were employed to warn approaching pedestrians that it was going to be raised; and that the bells used as warnings were insufficient.

The city denied that it was guilty of any negligence and alleged that any injuries received by plaintiff were the result of his own negligence.

The bridge-tender testified that while he was standing on the bridge an approaching boat signaled and he went into his house on the eastern end of the bridge; that as he went in he saw plaintiff approaching about eighty feet away; that he first turned a switch which caused two electric bells to ring, and then rang a bell on top of the house; that when he rang the bell on top of the house the plaintiff was passing

by the door; that he then took off the brake which held the bridge, again rang the bell, and turned on the power that caused the counterweight to lift the draw.  He testified further that he thought plaintiff was off the draw when he began to raise it; that when he had raised it about four feet he saw that the plaintiff was still on; that as soon as he saw him move he shut off the power and the plaintiff jumped; and that he then raised the bridge to allow the boat to pass.

The house stood on the sidewalk just next to the draw; one of the electric bells was located sixty feet from the house and the other 140 feet.  Plaintiff saw a "Stop" sign suspended from a girder of the bridge.  Some years before there had been gates or barriers in use at this end of the bridge, but they had been removed following an accident.

In a special verdict the jury found, in part, that "the system of bells and gongs in use on said bridge at the time and place complained of" was "so defective and insufficient as to make the bridge unsafe and dangerous to persons using ordinary care and prudence while traveling thereon;" that this fact was the proximate cause of the injury; that "at the time and place complained of the absence of a guard or gate at the end of the approach next to the bascule" made "travel over and along the north sidewalk of such bridge unsafe and dangerous to persons using ordinary care and prudence while traveling thereon;" that this fact was the proximate cause of the injury complained of; that plaintiff had not ceased to travel prior to the injury; and that no want of ordinary care on the part of the plaintiff proximately contributed to produce his injury.  It was further found that the bridge was not unsafe and insufficient because of any failure on the part of the bridge-tender to ring the bells or to ascertain the position of plaintiff before raising the bridge.

Judgment was ordered for plaintiff for $2,500.

For the appellant there was a brief by *Fred D. Merrill,*

corporation counsel, and *W. L. Evans*, .assistant, and oral argument by *Mr. Merrill.*

For the respondent there was a brief by *Nelson & Murphy* of Marinette, attorneys, and *G. F. Clifford* of Green Bay, of counsel, and oral argument by *Mr. Clifford.*

JONES, J.    Counsel for defendant rely on the case of *Stephani v. Manitowoc,* 101 Wis. 59, 76 N. W. 1110.    In that case plaintiff's intestate fell at night into the open draw of a bridge which was maintained as part of the street and frequently opened for the passage of vessels.    The evidence showed that deceased had frequently crossed the bridge; that she was a woman possessed of all her faculties; that previous to the swinging of the bridge at the time of the accident a bell was sounded, which she might have heard; that the passing vessel made a loud noise; that if she had looked and listened she might have known that the bridge was open; and that the approaches to the bridge were lighted by electric lights.

The deceased had lived in Manitowoc for many years and had crossed the bridge almost daily.    It was admitted that she must have known that it was a swing bridge without guards and that a person who walked off from the approach would go into the river.    It was held that the evidence precluded a recovery; that the possible yawning chasm was as great and real a danger as the possible rushing locomotive. . In many respects the facts already stated show a wide distinction between the two cases.

In the case before us there was no open chasm, but merely a crack to show where the draw and the abutment came together.    The jury might well have believed that there was no such line of demarcation as would show a stranger where the draw ended and the bridge began.    The plaintiff's eyesight was defective and he was utterly unfamiliar with the bridge he was crossing.    As stated in the opinion of the trial

judge, if the bridge had been a swing bridge plaintiff would have been carried with it and the accident would not have happened.

It can hardly be claimed that the plaintiff was negligent in choosing his mode of escape from the imminent danger which threatened him. He had to decide quickly whether he would run and jump for his life or be carried more than 100 feet in the air and take the chance of being thrown into the river. Of course the burden was on the defendant to show the contributory negligence, and we consider that this was a jury question.

It is claimed by defendant's counsel that the court should have set aside the answer of the jury to the effect that the system of bells and gongs was insufficient. In considering this question the jury had the right to consider whether signals given by the bells could be easily confused with those given by other bells in the vicinity and whether they indicated the point of danger and the points of demarcation of the draw. We do not consider that this answer of the jury should have been disturbed.

One of the main issues litigated was whether the finding of the jury that the absence of a guard or barrier made the bridge unsafe for persons using ordinary care should be sustained. Barriers or guards were in use on other bridges in *Green Bay,* and the testimony of the assistant engineer of the city was to the effect that it was entirely practicable to have them installed on this bridge.

It is claimed by counsel for defendant that there was no necessity for gates or barriers; that the draw itself made a barrier at the easterly end of the bridge, the end on which plaintiff entered the draw. We do not appreciate the force of this argument. If the testimony of the plaintiff is to be believed he walked upon the draw without observing or knowing that it was a draw and suddenly found himself suspended in mid air with but an indifferent chance of escape.

The bridge, including the draw, was an essential and integral part of the street which it was the duty of the city to maintain in reasonably safe condition for travelers using ordinary care. The law on the subject is well settled in this state. This action, as in *Stephani v. Manitowoc,* 101 Wis. 59, 76 N. W. 1110, was brought under sec. 1339, Stats. That case was first brought to this court on demurrer to the complaint, and the court said:

"No doubt it was the duty of the defendant to make its drawbridge reasonably safe and sufficient for the safe passage of travelers upon it, both by day and in the nighttime. It was built for a drawbridge. It was contemplated that the draw would often be open at times when travelers would be crossing upon the bridge. It is in relation to this function that its sufficiency is to be considered. If it was not reasonably safe as a drawbridge without some barrier to warn travelers and so protect them from falling from the bridge when the draw was open, then the city was in fault in not having provided such a barrier; or, if it was not reasonably safe and sufficient as a drawbridge in the nighttime without being lighted, then it was the duty of the city to light it in the nighttime,—for the city had not completely done its duty to the public until it had made that drawbridge reasonably safe and sufficient for the passage of travelers at all times. If the want of such a barrier or light was a defect at all, it was a defect in the structure of the bridge itself. Reasonable care and diligence on the part of the city would easily have remedied it." *Stephani v. Manitowoc,* 89 Wis. 467, 471, 62 N. W. 176.

On the second appeal this rule was adhered to, although the case was determined on the ground of contributory negligence.

In the present case plaintiff's counsel based the liability of the city on the grounds that the system of bells and gongs was insufficient and that there were no barriers. No claim was made by plaintiff that the bridge-tender was negligent in the performance of his duties, and although that issue

was submitted to the jury they found no negligence on his part. The city would not have been liable for the injury if it had been caused solely by negligence of the bridge-tender in failing to give proper warning or signals. It was held in an opinion by Mr. Justice VINJE that the operation of a drawbridge is a governmental and not a municipal or corporate function (*Bremer v. Milwaukee,* 166 Wis. 164, 164 N. W. 840), and the subject was fully discussed in an opinion by Mr. Justice BARNES in *Evans v. Sheboygan,* 153 Wis. 287, 141 N. W. 265.

Counsel for defendant argue that the answer of the jury on this issue should have been set aside; that the bridge-tender's negligence was the proximate cause of the injury. As already stated, the jury exonerated him and the trial judge affirmed their finding. We cannot say that there was no evidence to sustain the verdict on this issue.

*By the Court.*—Judgment affirmed.