GERRIE *v.* CITY OF PORT HURON.

1. MUNICIPAL CORPORATIONS — NEGLIGENCE — BRIDGES — DUTY TO MAINTAIN BARRIER TO SWING BRIDGE—STATUTES.

　　A gate or barrier strong and rigid enough to withstand the impact of a super-six Hudson sedan, traveling at the rate of 12 to 15 miles per hour, or skidding at less speed, *held*, not required in reason, or by 1 Comp. Laws 1915, § 4432, requiring the erection of gates or barriers to the draw or swing span of any bridge used for public travel when such draw or swing is open of sufficient strength to bar the passage of teams, animals, and foot passengers.

2. SAME—MAINTENANCE OF LIGHT ON BARRIER.

　　Where a 600-candle power arc light was suspended over the approach to a swing bridge 47½ feet from the gate and 66 feet from the opening into the river, which sufficiently disclosed the gate, there was no failure of light disclosing the gate even if there was no light on the gate itself.

3. SAME—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

　　In considering plaintiff's claim that the light was blinding to a view of the gate until its glare was passed, and

that it was then too late to stop with ice on the pavement, consideration must be given to the rule of ordinary prudence requiring one approaching a swing bridge known to be such to do so with the exercise of ordinary caution.

4. SAME—HIGHWAYS AND STREETS—SWING BRIDGE—DUTY TO APPROACH WITH ORDINARY PRUDENCE.

While the law permits one using a street to presume, in the absence of warning to the contrary, that it is reasonably safe and fit for travel, and this includes stationary bridges, this presumption may not dispense with the exercise of ordinary prudence in approaching a swing bridge, known to be such, and at times turned for the passage of vessels.

5. SAME.

In an action against a city for the negligent death of plaintiff's decedent by drowning when the automobile in which she was riding plunged into the river following another automobile which broke down the gate barring passage to a swing bridge when the swing was open, the contributory negligence of the driver of the car in failing to use ordinary prudence in approaching the bridge, *held*, sufficient to bar plaintiff's right to recover even if defendant was negligent in the manner of lighting the gate.

6. SAME—CITY NOT REQUIRED TO GUARD AGAINST CLIMATIC CONDITIONS.

Where the creosoted wooden pavement approach to the bridge was not slippery when bare, no negligence could be imputed to defendant city because it was slippery when coated with ice, since it is not required to guard against the climatic incident of sleet or rain freezing on the pavement and rendering it slippery.

Error to St. Clair; Law (Eugene F.), J.    Submitted January 25, 1924.    (Docket No. 154.)    Decided April 10, 1924.    Rehearing denied June 2, 1924.

Case by A. Emslie Gerrie, administrator of the estate of Laura Gerrie, deceased, against the city of Port Huron for the alleged negligent killing of plaintiff's intestate.    Judgment for defendant on a directed verdict.    Plaintiff brings error.    Affirmed.

*Walsh & Walsh*, for appellant.

*Burt D. Cady* and *Lincoln Avery*, for appellee.

WIEST, J.   Black river in the city of Port Huron is navigable.   The city maintains a swing bridge across the river on Tenth street.   When the bridge is turned to permit the passage of a vessel, iron gates across the street close the way to travel.   Shortly before 1 o'clock a. m., November 24, 1921, a vessel signaled for a turn of the bridge and a policeman having such duty in charge closed the gates across the street, went upon the bridge and had turned it from the street when a super-six Hudson sedan came over the street from the north, ran into and knocked down the gate guarding the open draw and plunged into the river.   The occupants of this car were saved. Right on the heels of this happening a Ford coupe, from the same direction, followed the Hudson car into the river.   The occupants of this car were drowned.

This action was brought by the administrator of the estate of Laura Gerrie, deceased, who was riding as a guest in the Ford car, to recover damages under the death act.   The declaration charges the city with the following negligence: Failure to provide a gate of sufficient strength to prevent a person exercising due care from driving into the river; failure to provide a light to disclose the gate in time to avoid danger, and maintaining an approach to the bridge paved with material which rendered the way slippery when wet or coated with ice. thereby causing automobiles to skid.

At the close of the proofs the trial judge reserved consideration of defendant's motion for a directed verdict.   Upon failure of the jury to agree a verdict was directed in favor of defendant.   By writ of error plaintiff seeks reversal.   No actionable negligence was shown and the verdict directed was right.   Negli-

gence of the city, if any, depended upon conditions as they existed at the time the Hudson car knocked down the gate. The gate was in two sections, with top rail 3x3x⅜ inches T iron, the lower rail also of T iron with lattice work 1¼x3/16 inches bar iron, riveted at intersections, and fastened, when closed to travel, by a heavy iron U shaped latch or saddle. Plaintiff claims this gate did not comply with the requirement fixed by 1 Comp. Laws 1915, § 4432, because not of "such design, shape and strength as to effectually bar the progress of teams, animals and foot passengers and prevent them from passing upon such draw or swing span" when such gate was closed. It is claimed a pressure of 500 to 1,000 pounds would spring the gate open by raising the connecting latch and lifting the sections from the supporting standards.

The Hudson car was going at a speed of 12 to 15 miles per hour and struck the gate while skidding and its force broke the heavy center latch connecting the sections, broke the bottom rail of one section, tore out some of the rivets holding the lattice work, knocked the gate down and stripped the spokes out of the left front wheel of the car. A gate or barrier strong and rigid enough to withstand the impact of a super-six Hudson sedan, traveling at the rate of 12 to 15 miles per hour, or skidding at less speed, is not, by law or in reason, required.

"It is the general rule that the municipality is not bound to maintain a barrier which will stop a motor vehicle as, on account of the great weight and usual speed of motor vehicles to-day such a requirement would be manifestly absurd." Babbitt, Law of Motor Vehicles (3d Ed.), § 414.

See *LaDue* v. *Township of Lebanon*, 222 Mich. 301. The statute relied on requires no such gate or barrier as contended for. There is no merit in the fault found with the gate. There was no light attached to the gate but a 600-candle power arc light

was suspended over the bridge approach 47½ feet from the gate and 66 feet from the opening into the river.    It is claimed this light was blinding to a view of the gate until its glare was passed and then it was too late, with ice on the pavement, to stop a car, going 12 to 15 miles an hour or even at less speed, short of the river.    Here we must take into consideration the rule of ordinary prudence.    The law permits one using a street to presume, in the absence of warning to the contrary, that it is reasonably safe and fit for travel, and this includes stationary bridges, but this presumption may not dispense with the exercise of ordinary prudence in approaching a swinging bridge, known to be such and at times turned for the passage of vessels.

As was said in *Stephani* v. *City of Manitowoc,* 101 Wis. 59 (76 N. W. 1110) :

"The approach to a swing bridge is an advertisement of danger to one who knows the character of the bridge, which speaks as loudly, and logically calls for as great an exercise of care, as the track of a railway.    The possible yawning chasm is as great and real a danger as the possible rushing locomotive, and the warning that it may exist is just as emphatic."

The arc light was a part of the city system of lighting and this particular one could hardly have been more blinding than others all along the street.    The drivers of the Hudson and Ford cars were familiar with the street and bridge and both came into the zone of danger at speeds preventing a stop on the slippery pavement short of the river.    We find no law requiring a light to be suspended on a gate if a nearby light shows up the gate.    We find no failure of light disclosing the gate, and if we could so find it would not save plaintiff's decedent from the contributory negligence of her driver in running blindly into such a place of known possible danger.    But it is claimed

the approach was paved with creosoted wooden blocks impervious to water, and they were coated with ice, rendering the way so slippery as to cause both cars to skid when brakes were applied and to slide into the river.   At the time of the accident there was a sleet storm, freezing where it struck the approach to the bridge and clouding automobile windshields. When bare, the creosoted wooden pavement approach to the bridge was not slippery or in any sense defective.   The city was not required to guard against the climatic incident of sleet or rain freezing on the pavement and rendering it slippery.

The record discloses no reversible error and the judgment is affirmed, with costs to defendant.

CLARK, C. J., and McDONALD, BIRD, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred.