Sylvester, Appellant, vs. City of Milwaukee, Respondent.
[Two cases.]

*December 5, 1940—January 7, 1941.*

*George Barrock* and *John L. Newman,* both of Milwaukee, for the appellants.

For the respondent there was a brief by *Walter J. Mattison,* city attorney, and *Arthur L. Rysticken* and *Werner A. Wilking,* assistant city attorneys, and oral argument by *Mr. Rysticken.*

WICKHEM, J. These actions arose out of a collision between an automobile operated by plaintiff Frank Sylvester and the partly raised south leaf of the North Broadway drawbridge in the city of Milwaukee. The accident happened on October 24, 1937. Sylvester was driving south on North Milwaukee street. About one block north of the bridge North Milwaukee street turns to the southwest and joins North Broadway, which street continues across the bridge. The bridge is of the double-leaf bascule type, each leaf being about sixty-one feet long. Bridgetenders are stationed on both north and south ends of the bridge. There are two bridgetender's shanties. The shanty on the north end of the bridge is west of the sidewalk on the west side of the bridge. An electric gong is placed on a post on the sidewalk at the north end of the bridge. This is at the west side of the bridge

near the railing. About twenty feet north of the north leaf there is a girder or steel beam which runs upward over and downward in an inverted "U" shape. Fastened over each girder there is a box on a post containing four glass compartments showing the words "Stop" when the lights are on. This box is about ten feet above the street. Identical equipment is installed in corresponding locations on the south end of the bridge. The electric lights and gongs are controlled by power switches, but are separately connected and operated, the north-end lights and gong being controlled by the north bridgetender and the south-end lights and gong by the south bridgetender. The power which raises the leaves of the bridge is applied and controlled in the same manner. The levers and equipment at the north end raise that leaf only and are controlled entirely by the north bridgetender. The south leaf is solely under the control of the south bridgetender. Due to the fact that it overlaps the north leaf, the south leaf must be raised some eighteen inches before the north leaf can be raised at all. A private telephone system connects the shanties operating by submarine cable, and by this means the south bridgetender notifies the north bridgetender when he is about to open the south leaf. The latter then sets his signals and raises the north leaf. As they approached the bridge, plaintiffs claim to have looked for the lights and listened for the gong, and deny that either was operating. When the car was about thirty-five to forty feet north of the bridge, Frank Sylvester heard a boat whistle and saw it just starting through a railroad bridge about two blocks east of the Broadway bridge. In view of its distance and knowing from experience that the Broadway bridge did not open for a few minutes after a boat had whistled for service, he concluded that he could cross the bridge before it started to open. Just as he was leaving the north leaf, the south leaf rose under the bumper of his car, causing it to stop suddenly and to bound back.

Plaintiffs contend that a jury would be entitled to conclude that plaintiffs were injured due to an insufficiency of the bridge, rendering it unsafe for public travel. If found, this fact would establish a breach of duty on the part of defendant city. *Stephani v. Manitowoc,* 89 Wis. 467, 62 N. W. 176; 101 Wis. 59, 76 N. W. 1110; *Leannah v. Green Bay,* 180 Wis. 84, 192 N. W. 388. Defendant claims that as a matter of law plaintiffs' injuries were caused solely or partially by the manner in which the bridge was operated just prior to the accident. If so, it is conceded that the city of Milwaukee sustains no liability because the operation of the bridge is a governmental function. *Bremer v. Milwaukee,* 166 Wis. 164, 164 N. W. 840; *Evans v. Sheboygan,* 153 Wis. 287, 141 N. W. 265.

Plaintiffs contend that a jury question was presented, (1) whether the absence of a gate or barrier at the north end made the bridge unsafe, and (2) whether the failure to have a single electric control of the lights and gongs which would put these into operation as soon as the south bridgetender operated his switch rendered the bridge unsafe. These contentions are ably defended, but we conclude that they are not sound and that the evidence discloses no defect or want of repair of the highway or bridge. The claim that an automatic gate which would drop and prevent entry upon the bridge would create a safer situation is speculative. If plaintiffs had run into such a railing and sustained the same shock and damages, they could with just as much force argue that this was an unnecessarily hazardous means of warning. If to avoid such a result the railing had been constructed of such flimsy material that it would break readily upon impact, and splinters had injured pedestrians, they could argue with considerable force that the bridge would be safer if only the gongs and lights were used as warnings. Plaintiffs rely on *Leannah v. Green Bay, supra.* In that case plaintiff, a pedestrian wholly unfamiliar with the bridge and not even knowing

that it was a drawbridge, was near the edge of the leaf as it started to rise. He jumped to the ground and was injured. The jury found that the gongs in use were insufficient to warn plaintiff and that absence of barriers or gates made the bridge unsafe. The bridge in question was a single-leaf bascule and plaintiff was on the end which was being raised when the draw was operated. The court held that the verdict was sustained by the evidence, and that under the circumstances the want of barriers could be found to constitute an insufficiency. The case is distinguishable in that the jury there was entitled to find and did find that no adequate methods whatever were employed to warn users of the highway that this was a drawbridge or that it was about to be raised. It may well be true that in the absence of other effective means of warning vehicular traffic a barrier might reasonably be considered as a necessary protection. Here, however, the lights and gong constitute a sufficient warning if properly operated. It is a matter of pure speculation whether a submarine cable committing the operation of the lights and gongs on both ends of the bridge to the control of a single bridgetender would be any safer than the present device. Had there been one bridgetender, one power hookup, and one switch for the lights and gongs, and had this failed, just as strong an argument could be made for the insufficiency of the bridge. The same comment would be applicable had the single bridgetender failed in his duty to warn. It could then with as much reason be claimed that the device should be so separately controlled as not to put entire reliance on a single human agency. It appears to us that the plaintiffs' injuries were caused by the manner of operating the bascule equipment, and that the bridge was sufficiently equipped to warn and protect those traveling upon it if properly operated. Even if it were to be conceded that there was some merit to plaintiffs' contentions, the cause of the accident must be

found, in part at least, to have been the manner of operating the bridge—a concededly nonactionable cause.

In *Ehleiter v. Milwaukee*, 121 Wis. 85, 87, 98 N. W. 934, 66 L. R. A. 915, 105 Am. St. Rep. 1027, the rule was established that the municipality is liable for a defect in the highway only when such defect is the sole proximate cause of the injury complained of.

"The rule was early established in Massachusetts and Maine that such liability of municipalities is special and statutory; that only where the defect in the highway is the sole, proximate cause of the injury is such liability imposed, and that if there concurs therewith another proximate cause, for which the municipality is not responsible, there is no liability; . . . Wisconsin, whose highway statutes were taken from Massachusetts, early adopted, also, this construction of what is now sec. 1339, Stats. 1898 [now 81.15, Stats.], and has persistently adhered thereto."

In view of this, we do not consider it necessary to examine the question whether plaintiffs' negligence exceeded that of the city.

*By the Court.*—Judgments affirmed.