[No. 17888. *En Banc.* December 31, 1923.]

KATHLYN TOBIN, *Appellant,* v. THE CITY OF SEATTLE, *Respondent.*[1]

CARRIERS (82, 88)—NEGLIGENCE (15)—PERSONAL INJURIES TO PASSENGER—PROXIMATE AND CONCURRING CAUSE—QUESTION FOR JURY. Since there may be more than one proximate cause of an accident, a complaint alleging that the city negligently failed to furnish a reasonably safe place where intending passengers may take city street cars, and that the driver of the automobile was negligent in operating his automobile, and that plaintiff was injured by the concurrent negligence of the two, states a cause of action against the city.

MUNICIPAL CORPORATIONS (399)—TORTS—GOVERNMENTAL POWERS. A city owning and operating a street railway system is not acting in its governmental capacity in negligently choosing a particular stopping place for intending passengers to board its cars, and in failing to do various things which would have made the place reasonably safe.

CARRIERS (76, 82)—TAKING UP PASSENGERS—NEGLIGENCE—PLEADING. It is not negligent for a city, in selecting a stopping place for its street cars, to choose a place between two street intersections, and such a charge in a complaint is indefinite and demurrable.

SAME (76)—TAKING UP PASSENGERS—LIGHTS. It is actionable negligence for a city to fail to provide sufficient lights at the place it has chosen for a stopping place for its street cars.

SAME (76)—NEGLIGENCE—SAFETY ZONES—TRAFFIC OFFICERS. It is not actionable negligence for a city to fail to provide safety zones at its stopping places for its street cars between street intersections, or to fail to provide traffic officers at such places.

SAME (82)—ACTIONS FOR INJURIES—PLEADING—COMPLAINT. A complaint charging a city with negligence in failing to make a stopping place for its street cars safe or to adopt any safeguard for intending passengers or to operate a system of signals, is not bad as against a demurrer.

SAME (88)—ACTIONS FOR INJURIES—QUESTION FOR JURY. It is for the jury to determine whether it was negligent for a city to choose a stopping place for its street cars between street intersections

[1]Reported in 221 Pac. 583.

where the street was paved only on one side and motor vehicles used one side of the street for travel in both directions.

FULLERTON, PARKER, and PEMBERTON, JJ., dissent.

Appeal from a judgment of the superior court for King county, Frater, J., entered December 19, 1922, upon granting a nonsuit, dismissing an action in tort. Reversed.

*J. L. Corrigan* and *Richard E. Morris,* for appellant.

*Thomas J. L. Kennedy* and *Edwin C. Ewing,* for respondent.

BRIDGES, J.—This was a suit for damages on account of personal injuries. After the cause was at issue, had been called for trial and a jury made up, the defendant objected to the introduction of any evidence on the part of the plaintiff because the complaint failed to state facts sufficient to constitute a cause of action. The court sustained the objection and entered an order dismissing the case, and the plaintiff has appealed.

After alleging that the respondent is a municipal corporation and owns and operates the street car system in the city of Seattle, the complaint states:

"III. That on or about the 23d day of November, 1921, between the hours of 5 and 6 o'clock P. M. (at which time it was dark and raining heavily) plaintiff attempted to board a street car, owned, maintained and operated by the said city of Seattle, as aforesaid, at a place designated and selected by the said city of Seattle for passengers to board said street cars, said place being located between Garfield and Galer Streets on Dexter Avenue, on the westerly side of Dexter Avenue in the city of Seattle, and due to the negligence of the said city of Seattle, plaintiff was seriously and permanently injured as hereinafter particularly described and set forth, such negligence of the city in and about the premises being particularly described and set forth as follows, to-wit:

"That the said defendant failed to maintain or provide any sufficient lights or any lights whatsoever at said place, and failed to maintain or provide reasonably safe means of ingress and egress for persons seeking to board street cars at the point hereinabove referred to, and failed to provide or maintain any safety zone or to station any traffic officer at said point, and failed to adopt any other method of making the place so designated by the defendant city, as a place where prospective passengers were invited to board the street cars of the defendant city, reasonably safe for the purpose, and failed to adopt any other safeguard for the protection of intending passengers seeking to board such street car at the point aforesaid, and failed to provide or maintain any system or means whereby intending passengers could signal said street car to stop for the purpose of allowing prospective passengers to board the same, and that due to the methods of operation adopted by said city, the defendant herein, such street cars would not stop at the point aforesaid to allow passengers to board the same unless such cars were signaled, and that the only means whereby an intending passenger could signal said street car was by standing at the edge of the paved portion of said street at the point above referred to, and that at said point the city had paved but the westerly portion of said street between the west street car track and the west curb of said Dexter Avenue and allowed and permitted an unreasonably heavy stream of traffic by automobiles and other vehicles to use said paved portion of the street for travel in both directions, thereby creating an exceedingly dangerous situation for passengers seeking to board said street cars at the point hereinabove referred to, and the said city was further negligent in this: That although it was well known to said city that said westerly portion of the street on November 23, 1921, and for a long time prior thereto, carried a heavy volume of automobile and other vehicular traffic in both directions, the city did not provide any means of warning the operators of such automobiles or other vehicles of the likelihood that passengers intending to board the street cars of

the said defendant city would be likely to be standing upon the paved portion of said street, and said city failed to provide any means of advising the operators of such automobiles or other vehicles of the presence of such prospective passengers, and failed to provide any means whatsoever of advising such operators of automobiles and other vehicles that there was any likelihood of pedestrians being upon the paved portion of said street at said point;

"IV. That due to the negligence of the said city of Seattle as hereinabove set forth, and while the plaintiff was in the exercise of due and reasonable care and was seeking to board said street car at the point hereinabove referred to and for that purpose, after having looked in both directions to observe whether there were any approaching automobiles or other vehicles, and no such automobiles or other vehicles being in sight had stepped out on to the paved portion of said street for the purpose of signaling the said approaching street car to stop so that plaintiff might board the same, and when said street car had almost stopped at the place opposite which plaintiff was standing in response to her signal, an automobile driven by one Harold B. Daigh approached the point where plaintiff was standing, from the south, and that due to the negligence of the said city of Seattle there was no means or method adopted to apprise the said Daigh of the presence of the plaintiff upon the paved portion of said street, and as the said Daigh approached from the south, another automobile approached from the north at a reasonable rate of speed, and that by reason of the situation thus created and before plaintiff could apprise the operator of said automobiles, or either of them, of her presence, and before plaintiff could reach a place of safety or take any steps to prevent her injury, the plaintiff was struck by the automobile operated by the said Daigh and thrown under the street car which was in the act of stopping in response to plaintiff's signal, and that as a result thereof said street car ran over and upon the plaintiff and caused serious and permanent injuries to plaintiff as hereinafter set forth.

"V. That if the said defendant city had maintained

proper or sufficient lights at said point, or had provided a safety zone at said point, or had stationed a traffic officer there, or had taken any other reasonable means to render said place reasonably safe for the purposes for which the city intended it to be used, or had provided any other method by which the operators of automobiles and other vehicles using said street would be apprised of the presence of pedestrians upon said paved portion thereof, the plaintiff would not have been injured, and that it was due to the negligence of the defendant city that the plaintiff sustained injuries hereinafter more particularly referred to.

"VI.   That the said Harold B. Daigh failed to operate his automobile with reasonable care and caution and failed to maintain a proper lookout for pedestrians, but that if the city had not been negligent in the particulars hereinabove set forth, plaintiff would not have been injured.

"VII.   That as a result of the negligence of the city as hereinabove set forth, combined with the negligence of the said Harold B. Daigh, plaintiff sustained severe and permanent injuries as follows:   . . ."

The complaint then alleges the extent of the plaintiff's injuries and that she had filed a claim with the city.

The theory of the respondent (which appears to have been sustained by the trial court) is that the acts and omissions set forth in the complaint as constituting negligence on the part of the city did not constitute the proximate cause of the injury to the appellant.   The basis of this complaint is that, as the result of the concurrent negligence of the city in connection with the place where she undertook to take the street car, and that of one Harold B. Daigh in the operation of his automobile, appellant was injured.

While it is almost universally held that one guilty of negligence will not be liable to one injured unless the negligence is the proximate cause of the injury, it is also generally held that either of two, or both,

parties are liable where their negligence proximately contributed to the injury, even though the act of negligence of the one was independent of that of the other. In the case of *Hellan v. Supply Laundry Co.*, 94 Wash. 683, 163 Pac. 9, we quoted approvingly from Shearman & Redfield on Negligence (6th ed.), § 26, as follows:

" 'The proximate cause of an event must be understood to be that which, in a natural and continuous sequence, unbroken by any new, independent cause, produces that event, and without which that event would not have occurred.' "

In that case we further said:

"There may be more than one proximate cause for the same injury. The negligence of different persons, though otherwise independent, may concur in producing the same injury. In such a case, all are liable. They may be held either jointly or severally. The negligence of one is no excuse for that of another. The question of proximate cause is a mixed question of law and fact. It is usually a question for the jury. It is only where the facts are undisputed and the inferences to be drawn from them are plain and incapable of reasonable doubt or difference of opinion that it may become a question of law for the court."

Here the complaint charges negligence on the part of the city in failing to furnish a reasonably safe place where intending passengers may take the street car, and that Daigh was negligent in the manner in which he operated his automobile, and that the appellant was injured as a result of the concurrent negligence of these two. It cannot be said, as a matter of law, that the negligence of Daigh was the one and only proximate cause of the injury, and that the negligence of the city the remote cause of it. It may well be that the negligence of each, the city and Daigh, was the proximate and direct cause of the injury. Such being the situation, it was for the jury to determine whether the city's

negligence was the sole or one of the proximate causes of the injury.

In the case of *Carterville v. Cook,* 4 L. R. A. 721, the facts were that a boy, while passing along a public sidewalk in the village, was pushed or shoved by another boy from the sidewalk, at a place where it was elevated some six feet above the ground and where it was unprotected by any railing or guard. The court held the village liable to the boy, although the direct cause of the fall was the negligence of a third person. This case is not unusual but is merely illustrative of many others.

In the case of *Eskildsen v. Seattle,* 29 Wash. 583, 70 Pac. 64, the evidence showed a child would not have been injured by the negligence of the defendant if it had not been for the act of the railroad company in moving cars, and we held that negligence of another which may have contributed to the injury was no excuse for the negligence of the defendant where that negligence contributed to the injury.

The general rule of law is not in doubt. The question always is, can the court say, as a matter of law, that the negligence of the defendant was not the proximate cause of the injury, and if it cannot so say, then that question must be submitted to the jury. If, as alleged in the complaint here, the respondent was negligent in maintaining the place where passengers were invited to take its street cars, and that negligence, together with that of the driver of the automobile, were the concurring causes of the injury, then the question must be submitted to the jury. In this regard, we think the complaint stated a cause of action, and that the court was in error in sustaining the demurrer to it.

The respondent contends that, in any event, the charges of negligence upon its part are not actionable

because it was not under any legal duty to the appellant in those respects. The tenor of its argument is twofold; first, because the city in doing or failing to do the things about which complaint is made, acted, or would have acted, only in its governmental capacity, and that while so acting, a municipality is not liable in damages for its acts or omissions; and, secondly, that the acts of negligence charged are either so general as that an action will not lie upon them, or they seek to lay upon it duties and obligations which the law will not impose.

In order to get a clear view of the situation we must look to the substance of the complaint. It alleges that the appellant, while undertaking to go aboard one of the respondent's street cars at a place selected by it, was injured because the place so selected was not reasonably safe, and that it was unsafe because of "the negligence of the city of Seattle. . . . such negligence being particularly described and set forth as follows": (1) in that the place selected was between two street intersections, where vehicular traffic had the right of way; (2) in that it failed to maintain or provide any or sufficient light at that place; (3) in that it failed to provide any safety zone; (4) in that it failed to have stationed at that place any traffic officer; (5) in that it failed to adopt any other method of making the place reasonably safe; (6) in that it failed to adopt any safeguard for the protection of persons intending to go aboard street cars; (7) in that it failed to operate or maintain any system whereby intending passengers could signal the street car to stop for the purpose of allowing them to board it; (8) in that at the place in question it had paved but the westerly portion of the street and knowingly permitted all vehicular traffic to use that portion, traveling it in both directions, and, (9) in that it failed to provide any means whatever for

safeguarding prospective passengers against danger from automobile traffic. The complaint further alleged that "due to the negligence of the said city of Seattle," as above set forth, the appellant was injured.

The true basis of the complaint is not that the respondent was negligent in choosing this particular stopping place, but that, having chosen it, it was negligent in failing to do the various things complained of, which, if they had been done, would have made the place reasonably safe.

We cannot agree with the respondent's contention that the alleged acts of negligence were those required to be done by it while acting in a governmental capacity. The city owned and operated this street railway system in its proprietary capacity, and whatever duty it owed to its patrons would be those which the law imposes upon it while acting in its private or proprietary capacity.

But more important and difficult questions arise on respondent's contention that the various charges of negligence set out in the complaint seek to impose on it greater duties than the law will sanction.

Generally speaking, a municipality which owns and operates a street railway owes the same duties to its patrons that a private owner and operator would owe to his patrons under the same circumstances. But the operator of a street railway system, whether a private individual or a municipality, is not an absolute insurer against injury to his patrons. There are, of course, things which such operator might do to lessen the number of injuries but which the law does not require of him, because the doing of them would impose such heavy and drastic burdens as would make it impossible for him to operate. In other words, the operator is not negligent in failing to do everything which might tend to lessen danger to his patrons.

The correct rule in this regard is laid down by us in *Foster v. Seattle Electric Co.,* 35 Wash. 177, 76 Pac. 995, where we said:

"There are dangers attending on their transportation which it seems no human prudence can foresee, while there are others which can be foreseen, but which cannot be effectually guarded against, because to do so would make the conduct of the business so burdensome as to prohibit it altogether. Hence, when a street car company exercises towards its passengers the highest degree of care consistent with the practical conduct of its business, it performs towards them its full legal duty, and it is not liable, even for injuries which might have been foreseen and prevented, if the means required to prevent them would involve a burden amounting to a practical prohibition of the business."

Let us examine the alleged acts of negligence here in the light of the principles of law announced. We will take them in the order they are given above.

(1) Neglect on the part of the respondent in selecting as a stopping place a point between two street intersections. The complaint is indefinite in this regard. The stopping place may have been near the intersection of streets, or at or near the middle of the block. Cars must, of course, stop somewhere to take on and let off passengers. While it would not be negligent to stop abreast the intersection, it might be negligent to stop at or near the middle of the block where vehicular traffic has the right of way; particularly is this true if the custom is to stop the car elsewhere at the intersection of streets. As against a demurrer, the complaint will be liberally construed. We are of the opinion that the charge of negligence in this regard is one upon which the appellant would be entitled to produce proof.

(2) Next, as to the charge of negligence because the

city failed to provide any or sufficient lights at the stopping place. It may be true that, generally speaking, a municipality, in furnishing street lights, acts in its governmental capacity, and that, under these circumstances, it would not be for courts and juries to determine how many lights there should be or where they should be located. But where that same city owns and operates a street car system, it is its duty to see to it that sufficient light is furnished at places where it stops its cars for the taking on and letting off passengers to make them reasonably safe, and so in this instance respondent owed a duty to its patrons, including the appellant, to furnish light sufficient to make the place where appellant was injured reasonably safe. Such would be the duty of a private operator. Our conclusion, therefore, is that the complaint in this regard stated actionable negligence.

(3) The next complaint is that no safety zones were provided. It is our view that the respondent had no duty to the appellant in this regard. If the street railway system were being operated by a private owner, it would not only have no duty to mark out safety zones, but it would have no right to do so, and we cannot see that any greater duty in this regard should devolve upon the city than upon a private owner under the same circumstances. We hold that this charge of negligence is not actionable.

(4) It is here charged that the city was negligent in failing to have a traffic officer stationed at the place in question. It is perfectly plain that it would be impossible for the respondent, or any privately owned street railway system, to station watchmen at the almost innumerable stopping places that street cars have. To impose that obligation upon it would be to so burden it as to make it impossible for it to continue operations. It is generally held that the law applicable

to steam railroads, which have particular places to stop to take on and let off passengers, which places are generally prepared in advance by having station buildings or platforms, cannot in fairness be applied—at least too strictly—to the operation of street railways, which stop upon signal at innumerable places and usually have not regular stations and platforms. *Turner v. City Electric R. Co.,* 134 Ga. 869, 68 S. E. 735. In the language of the case of *Foster v. Seattle Electric Co., supra,* we say here that:

". . . when a street car company exercises towards its passengers the highest degree of care consistent with the practical conduct of its business, it performs towards them its full legal duty, and is not liable, even for injuries which might have been foreseen and prevented, if the means required to prevent them would involve a burden amounting to a practical prohibition of the business."

We therefore hold, as a matter of law, that the respondent did not have any legal duty to the appellant to furnish a traffic officer, or what would be better named under the circumstances, a watchman, at the place in question.

(5) It is next alleged that the respondent failed to adopt any other method of making the place reasonably safe, and (6) that it failed to adopt any safeguard for the protection of intending passengers, and (7) that it failed to operate any system whereby intending passengers could signal the street car to stop for the purpose of allowing them to board it. While these various charges of negligence are very general and would doubtless be subject to a motion to make more specific and certain, yet under our cases they are not bad as against demurrer.

(8) It is next alleged that the particular place selected by the respondent for stopping its cars was

where the street was paved only on one side, and that it knowingly permitted all vehicular traffic to travel both ways on the one side of the street, and that this made a dangerous situation. We can understand how one, in coming out on the street to take a car, might look up the street in the direction from which vehicular traffic would ordinarily come, and not look in the other direction where he would not expect any approaching traffic. It may be that the control of the traffic on the streets of a municipality is by the city in its governmental capacity, and we may assume that, at this particular place, the city in that capacity would not be liable for permitting traffic both ways on one side of the street; but it must be remembered that the respondent, in its capacity of a street railway operator, had nothing to do with the control of the traffic and would have to accept the condition as it found it, and since it is alleged that it, as operator of the street railway, knew that the traffic traveled in both directions on one side of this street, it was a question for the jury to determine whether, having such knowledge, it was negligent in selecting such a place for the taking on and letting off passengers. We think this charge of negligence is one which the appellant is entitled to prove.

(9) It is here charged that the respondent was negligent in failing to provide any means whatsoever for safeguarding prospective passengers. What we have said with reference to number six, *supra,* is applicable here.

Inasmuch as the complaint in certain particulars states a cause of action, the trial court erred in sustaining a demurrer to it and in dismissing the action.

After the trial court had orally announced that it would sustain the challenge to the complaint, and after the jury had been discharged, but before the final

written order of dismissal was made, the appellant asked permission to bring into the case Mr. Daigh and to amend her complaint. The court refused these permissions. Inasmuch as the case must be reversed and remanded for trial, it is not necessary for us to determine whether the lower court's ruling was right. When the case is returned to the lower court, the appellant will have the right to bring in additional parties defendant and to amend her complaint as she sees fit.

The judgment is reversed and the cause remanded for trial.

MAIN, C. J., HOLCOMB, TOLMAN, and MITCHELL, JJ., concur.

MACKINTOSH, J., concurs in the result.

FULLERTON, J. (dissenting)—In my opinion, no actionable negligence is stated in the complaint. I therefore dissent.

PARKER and PEMBERTON, JJ., concur with FULLERTON, J.