[Civ. No. 9874.   Second Appellate District, Division Two.—June 28, 1935.]

ALFRED S. NORTHRUP, Respondent, v. PACIFIC ELEC-
TRIC RAILWAY COMPANY (a Corporation), Appel-
lant.

Frank Karr, E. E. Morris and C. W. Cornell for Appellant.

Anderson & Anderson and W. H. Anderson for Respondent.

CRAIL, J.—The plaintiff recovered damages for personal injuries against both defendants in the trial court although the injury to him was from the collision of his body with an automobile driven by the defendant Braun, who had no relation with the Railway Company. The defendant Braun did not appeal. The Pacific Electric Railway Company appeals, raising as its principal ground for a reversal the total failure of the plaintiff to prove that said company was guilty of negligence or that its negligence, if any, was a proximate cause of the plaintiff's injuries. The accident occurred on the triangular intersection of South Lake Avenue and Arden Road in Pasadena. Both streets are paved with asphalt and the company's rails are laid flush with the pavement. The tracks of the defendant company enter the intersection from a private right of way, cross Arden Road at practically a right angle and gradually curve the few but necessary degrees until they run along the center of South Lake Avenue. At a place in said triangle hereafter more clearly described, the company had designated a place for its cars to stop to take on passengers going in either direction by suspending a metal disk above the center of the pairs of tracks. This disk bore the legend, ''Street Car Stop''.

An inspection of plaintiff's exhibit 6, which is a map in detail and made to a scale, shows that the lines of the curb and property lines on the north side of Arden Road as they enter said intersection curve around at what would ordinarily be the corners of the intersection, so that it is somewhat difficult to determine just where the projection of these lines would go to form the ''unmarked crosswalk'' for pedestrians. Nevertheless it is apparent that the company's ''car stop disk'' had been hung at a point so that the most convenient place for intending passengers to cross from the sidewalks to get on board its cars would be in this ''unmarked crosswalk''. It will be remembered that under section 131½ of the California Vehicle Act, the driver of any vehicle is bound to yield the right of way to a pedestrian crossing the roadway within any unmarked crosswalk at the end of a block.

Under the established operating conditions the company's cars stopped at this point to take on passengers only on signal from the intending passengers. The disk was so located that an automobile traveling south on South Lake Avenue between the west curb and the westerly pair of tracks, if it continued to travel in a straight line to Arden Road through said large triangle would cross almost at the point which would be, and in this case was, occupied by persons intending to enter a northbound car when such a car should arrive at the car stop.

The plaintiff was the holder of a monthly transportation ticket on appellant's lines and was thoroughly familiar with the streets and the stopping place, as he was accustomed to board the cars at this place nearly every day. About 8 P. M. on October 15, 1932, the plaintiff, who resided on the east side of South Lake Avenue a short distance north of the car stop and who was waiting on the east side of said avenue opposite the car stop, saw the reflection of the headlight of the company's approaching northbound street car which was then back on the private right of way in a cut, and also saw a wig-wag signal located just east of the tracks and immediately south of Arden Road start to operate, at which time he and his wife and two ladies walked out from the bench to the car stop in the street, intending to take passage on the northbound street car. The street car was still back on the private right of way 50 feet from where the tracks came into South Lake Avenue or about 125 feet south of the car stop. The street car was still in the curve and the motorman could not yet see the point where the plaintiff was standing. There was no testimony that the plaintiff or anyone else had yet signaled the motorman to stop. At this very instant the automobile driven by defendant Braun coming south on South Lake Avenue ran over and against the plaintiff, inflicting injuries which are the basis of this action.

The plaintiff was not injured directly or indirectly by the defendant's street car nor by any negligent act of its motorman. The negligence complained of was specifically pleaded and no such negligence was set forth. In his brief the plaintiff complains of the defendant that "throughout they have persisted in advancing and holding the idea that plaintiff's complaint against the street railway company was based upon

some *direct negligence* on the part of its employees in handling its particular street car which the plaintiff was seeking to board". The plaintiff's allegations of negligence against the company were, in substance: "That it located its 'car stop' sign 'at a point which compelled its intending northbound passengers to signal and board its cars at a point in the center of the line of northerly and southerly automobile traffic along South Lake Avenue . . . ' '"; that it failed to provide sufficient lights for the street intersection and failed to provide other means of safety for the place; that it failed to provide any means whereby intending passengers could, from a safe place on the east curb of South Lake Avenue, signal the company's cars to stop; and that it failed to install any means of warning the operators of automobiles that prospective northbound passengers intended to board its cars.

The jury returned a verdict in favor of the plaintiff, and before entry of the verdict and judgment the company moved the court to enter judgment in its favor notwithstanding the verdict, which motion was denied.

██ It is the contention of the company that the evidence fails to show any negligence on its part and that its negligence, if any, was not a proximate cause of the plaintiff's injuries. The case seems to have been tried upon the theory that the plaintiff was already a passenger of the street railway company and that the company owed to him the same duty as a commercial railway company which has provided its own stations and platforms.

The case of *Choquette* v. *Key System, etc.,* 118 Cal. App. 643 [5 Pac. (2d) 921], is the California case most nearly in point. That was a case in which a passenger was injured after alighting from a street car and while walking away therefrom. The court said, "a passenger upon such a car ceases to be such when he has safely alighted upon the public street and clears the car from which he alights." The court also quoted with approval on page 655, "Courts have differentiated between the duties of a street car company to its passengers and a commercial railway in so far as a duty rests upon them to furnish safe passage to and from a car. From the nature of things a street car company cannot discharge those duties with respect to passengers. It has no control over the streets or traffic upon the streets; it has

no stations or platforms and can erect none upon the street. From the curb to the car is a public place open to travel by all, and over it the company has no control or jurisdiction.''

Under the circumstances of this case the plaintiff did not yet sustain to the company the relation of passenger. He was a pedestrian upon the highway to whom all other travelers owed the reciprocal duty of reasonable care. But the company did not owe him the duty of anticipating that strangers over whom it had no control would be guilty of negligence which would result in plaintiff's injuries upon a street over which it had no control, but with which the plaintiff was as familiar with conditions as the company; and especially the company was not obliged to anticipate that such strangers in order to commit such negligence would violate a state statute. There was no negligence on the part of the street car company and for this reason alone the motion of the company for judgment should have been granted.

The company's next contention is that the proximate cause of the accident was the negligence of the defendant Braun, the driver of the automobile which struck the plaintiff; that his negligence constituted an efficient intervening cause, and that if the company was negligent, which it was not, nevertheless said negligence was the remote and not a proximate cause of the injuries to the plaintiff. We are satisfied that the company is correct in this contention also. (*Schwartz* v. *California Gas & Elec. Corp. et al.,* 163 Cal. 398 [125 Pac. 1044] ; *Olsen* v. *Standard Oil Co.,* 188 Cal. 20 [204 Pac. 393] ; *Reynosa* v. *Pickwick Stages System,* 115 Cal. App. 383 [1 Pac. (2d) 548].) The plaintiff relies largely upon the case of *Tobin* v. *Seattle,* 127 Wash. 664 [221 Pac. 583], but that case is not in line with the California cases.

It is apparent from what we have said that the court should have granted the company's motion for a directed verdict and for judgment thereon. The case is reversed with instructions so to do.

Stephens, P. J., concurred.

FRICKE, J., *pro tem.,* Dissenting.—I dissent. There is testimony in the record that the headlight of the approaching street car almost blinded Braun, the driver of the automobile

which struck the respondent; that Braun, who was driving in a straight line south on the west side of South Lake Avenue, did not see respondent until he was too close to avoid striking him, and that the low degree of visibility of persons standing at the street car stop was in part due to the fact that the street at this point was poorly lighted. The court and jury were warranted in concluding that appellant, by reason of its repeated operation of cars on this line, had knowledge that the rays of light from its cars would produce this effect upon drivers of automobiles proceeding south on South Lake Avenue, and that this might occur, and in this case did occur, while prospective passengers were at the designated car stop; that the maintaining of the car stop at the particular point, in preference to other available locations where such danger did not exist and without making any provision for the protection of intending passengers against this particular hazard, constituted a failure to use ordinary care toward its prospective passengers, who were, by the placing of the "Street Car Stop" sign, invited to stand at that spot, and that such failure constituted a proximate cause of respondent's injuries.

The case is not analogous to the cases involving injuries to passengers about to board or who have alighted from a street car, and where the condition of the streets and traffic are beyond the control of the carrier. Here the carrier chose the conditions and surroundings of its car stop, and the point chosen included a particular hazard with which appellant must have been familiar. The case most nearly in point is that of *Tobin* v. *Seattle,* 127 Wash. 664 [221 Pac. 583], which supports the principle of the liability of a street car company because of its failure to protect its prospective passengers from dangers peculiar to the place adopted as a car stop.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 26, 1935.