Pilvelis et al. *v.* Plains  Township, Appellant, et al.

Argued March 7, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER, RHODES and HIRT, JJ.

*Hopkin T. Rowlands,* with him *Herman J. Goldberg,* for appellant.

*John A. Gallagher,* with him *John S. Lopatto,* for appellees.

OPINION BY KELLER, P. J., July 19, 1940:

The minor plaintiff, when twelve years old, was struck and badly hurt while riding a bicycle, on the handle bars of which a younger boy was sitting, by an automobile driven by one Ray Butler on the wrong side of the road, and moving with such force that it knocked the plaintiff about ninety feet, breaking a number of his bones, and killed his companion.

Alleging that the accident was due to the defective condition of West Carey Street on which the collision occurred, the plaintiff and his mother brought their action in trespass against the Township of Plains, the 'municipality' responsible for its condition.

The defendant by scire facias proceedings, brought in as additional defendants the said Ray Butler and also Scranton-Spring Brook Water Service Company, which, it claimed, was responsible for one of the alleged street defects averred to have been the cause of the accident; and the case went to trial in that form. The

court directed a verdict for Scranton-Spring Brook Water Service Company, and submitted the case to the jury as to the other defendants. The jury returned verdicts in favor of the respective plaintiffs against both of the remaining defendants jointly, on which judgments were entered. The Township alone appealed.

West Carey Street is a public highway in Plains Township, Luzerne County, running approximately east and west. Some little distance east of Rose Avenue it is crossed by an overhead trestle carrying the tracks of the Laurel Line, an electric railway. At the northwest corner of West Carey Street and Rose Avenue there is a sewer intake to dispose of the surface water, and in order to conduct the surface water gathering there into said intake the township officials constructed a wide, open, shallow drain from the crown of the road towards the intake, about twelve feet [1] wide and tapering gradually in a wide curve from the road level on each side to a depth of five and a quarter inches in the middle. We can get some idea of its relative width and depth, if we consider that it is practically in the same proportion as a shallow curved drain cut across a sidewalk for the purpose of carrying rain water to the gutter, one foot wide and less than half an inch in depth at the middle, or two feet wide and five-sixths of an inch deep at the middle. While witnesses for the plaintiff, under the questioning of his counsel, called it a hole or depression it was neither. It was an open curved shallow drain which had been purposely constructed by the township authorities in order to dispose of the surface water gathering there and carry it into the sewer intake. There was no testimony by any

---

[1] The engineer's draft is not attached to the printed record, but counsel in his argument used these figures, presumably from that draft, and his figures were not disputed on the argument. If there is any error in our understanding of them, it is due to the failure to attach the draft.

person qualified to testify as an expert, or by any one else, that it was improperly constructed, or that it was of a dangerous design, or ill adapted for the purpose for which it was constructed.

On the evidence in this record there is nothing to support a finding by a court or jury of any negligence in its plan, design or construction that would justify a verdict and judgment against the township because of it.

One hundred and eighty feet west of this drainage dip, on the other side of the street, (the south side), there was a depression in the street in front of dwelling No. 71 West Carey Street, which had been caused by opening the street at that point to make a water connection. It had been filled up and the surface (oiled macadam or black top) restored as it had been, but in the course of time the filling under the patch had subsided somewhat, leaving a depression there. The patch was about seven feet long, extending from the ditch or gutter northward towards the center of the street. It was about two feet wide at the northern end, and was "L" shaped, being about four feet wide at the gutter. The sinking or depression was two and a half inches deep at its deepest point, at the center. There was evidence that it had existed long enough to put the township authorities on notice. While sometimes called by counsel a hole, it was really a depression or sinking. Forty feet west of this depression or patch was a pole on the south side of the street.

On the early evening of August 26, 1936, shortly before seven o'clock, when it was beginning to get dusk, Ray Butler came driving his automobile westward on West Carey Street. He was a W.P.A. worker and had quit work near Dupont at 4:00 o'clock. After spending some time gathering tools, etc., he drove to Avoca with two W.P.A. fellow workers, arriving there about 4:45. He stopped there at John Romanski's saloon,

where he spent about three-quarters of an hour, and admits he drank a whiskey and two beers. He left there about 5:30, drove to Plainsville, where he left one of his companions off and spent some time in a barber shop. Then he went on and ran out of gas, and he and his companion walked back a block and got a gallon of gasoline at a garage in Plains. His friend left him soon after he drove down Carey Street under the Laurel Line. Butler's story—told when called by the plaintiff as for cross-examination—was that when he came to Rose Avenue his right wheel hit what he called a hole—meaning the drainage dip—which threw his car out of its course and bumped him, so that he was in a daze and lost control of his car, which went over on the left side of the road, where he had no control of it whatever and traveled 180 feet to the 'hole' or depression on that side of the road, and just as he was partially regaining control, the left side of his automobile struck this 'hole', which threw his car up against the pole—40 feet away—and the back end of his car hit this pole and there was a crash, and also another crash in front of him—when he hit the boys on the bicycle traveling eastward and knocked plaintiff 90 feet—but he didn't know what it was, and he pulled his car off to the right side of the road and stopped. Other witnesses testified to the speed and irregularity of his course. One witness testified that the car ran up on the sidewalk on the north side and he (the witness) jumped on the running board and made Butler stop his car. The physician who examined Butler very shortly after the accident testified that he was intoxicated.

Butler also testified that he had traveled on West Carey Street only four or five times "all told", the last time being nine months or a year before; but his companion, Conway, told a different story (pp. 171a-172a).

In any event, the verdict of the jury in this case,

unappealed from, is a legal adjudication of Butler's negligence. If it was based on disbelief of his testimony that he was unfamiliar with the conditions of West Carey Street, it would fall exactly within the ruling in *Stone v. Phila.*, 302 Pa. 340, 153 A. 550, which held that the city was relieved from liability for its "incautious act" in permitting a hole or defect in one of its streets, which Leven, the additional defendant drove into, knowing its presence there, and in consequence injured the plaintiff who was standing at the rear of an ice wagon, taking out a piece of ice. On the other hand, if the verdict was based on the reckless conduct of a drunken driver, who lost control of his car but continued to operate it at high speed on the wrong side of the road for 180 feet, because he did not know enough to stop it, and then struck the depression, and smashed into the pole and then into the boys on the bicycle traveling eastward, the same principle of nonliability on the part of the municipality that was applied by the Supreme Court in the Stone case, and other cases hereinafter referred to, would rule the present case, for a municipality, and especially a township, in which a small village is located, cannot reasonably be expected to foresee that a reckless, drunken driver will so operate his car that he will lose control of it as Butler did and menace approaching traffic as he did for 220 feet, or that the small depression in front of No. 71 might result in the death and injury which was the consequence of Butler's reckless and drunken driving.

The principle is stated in the Restatement of Torts, in §430, as follows:

"In order that a negligent actor shall be liable for another's bodily harm, it is necessary not only that the actor's conduct be negligent toward the other in the particulars stated in §281, clause (b) and comment thereon, but also that the negligence of the actor be a

*legal cause* of the other's harm." In order that the negligent conduct may be a *legal* cause, it must be a *substantial factor* in bringing about the harm (§431); and the negligent conduct should be such that the actor should recognize that the act creates an appreciable chance of causing the harm done (§§281 and 289); and in §447, "The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if (a) the actor at the time of his negligent conduct should have realized that a third person might so act, or (b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or (c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent." The Restatement, in effect, thus holds that the intervening negligent act of a third person *does* make it a superseding cause, (1) if the actor had no reason to realize that the third party might act as he did, or (2) that a reasonable man, in the circumstances present, would regard it as highly extraordinary that the third party would so act, or (3) that the intervening act was extraordinarily negligent.

Our Pennsylvania decisions are generally in accord with the principles enunciated in the Restatement, if the term 'proximate cause' is substituted for 'legal cause,' bearing in mind that the latter must be a 'substantial factor' in bringing about the harm or injury.

The very interesting note in the Pennsylvania Annotation to the Restatement of Torts, relative to §447, shows that while there have been qualifications of the case of *Stone v. Phila.,* supra—notably *Kline v. Moyer,*

325, Pa. 357, 191 A. 43,—which, however, had nothing to do with a defect in a road or street, but was solely concerned with active or dynamic negligence as opposed to passive or static negligence—the decision in the Stone case has not been overruled or reversed, but on the contrary, has been followed or cited with approval in *Hoffman v. McKeesport,* 303 Pa. 548, 154 A. 925; *Helmick v. South Union Twp.,* 323 Pa. 433, 185 A. 609. And even *Kline v. Moyer,* supra, and the cases following it, apply the principle of the Stone case and the earlier cases cited in it, where (1) the third party knew of the defect in the road or street when he committed his intervening negligent act, or (2) where the conduct of the third party was extraordinarily negligent or not reasonably foreseeable: *Dominices v. Monongahela R. R. Co.,* 328 Pa. 203, 195 A. 747; *Lobert v. Pack,* 337 Pa. 103, 108, 9 A. 2d 365; see also *Thubron v. Dravo Contracting Co.,* 238 Pa. 443, 86 A. 292; *Schaeffer v. Jackson Twp.,* 150 Pa. 145, 24 A. 629; *Hoke v. Edison L. & P. Co.,* 284 Pa. 112, 115, 130 A. 309. In *Nelson v. Duquesne Light Co.,* 338 Pa. 37, 12 A. 2d 299; and *Mautino v. Piercedale Supply Co.,* 338 Pa. 435, 13 A. 2d 51, it was held that the happening of the negligent act should reasonably have been foreseen or expected.

In our opinion the intervening negligent act of Butler causing the harm or injury to the plaintiff was so clearly unforeseeable and extraordinarily negligent that the neglect of the township in failing to fill up the depression in front of dwelling No. 71, was not the 'proximate cause' of the plaintiff's injury, or a legal cause of the plaintiff's harm, to use the language of the Restatement; and that Butler was solely responsible for the accident causing injury to the plaintiff. There being no reasonable difference of opinion as to the extraordinary character of Butler's negligence, it was for the court to determine.

The proximate, or substantial and effective cause of

this injury was not the "incautious act" of Plains Township in not levelling up the depression caused by the sinking of the fill at this water connection, but the reckless and negligent conduct of a drunken driver, whose actions nobody could reasonably foresee.

The judgments against the appellant, Plains Township, are reversed and are now entered in its favor.