## CITY OF MIAMI, a municipal corporation v. JEFF SAUNDERS

10 So. (2nd) 326                                    Division A

November 6, 1942          Rehearing Denied November 17, 1942

J. W. Watson, Jr., and Murrell & Malone, for appellant.

Hendricks & Hendricks, for appellee.

BUFORD, J.:

Appeal brings for review judgment in favor of plaintiff in a suit for damages claimed for injuries received in an automobile accident.

The declaration alleged in effect that the defendant municipality was answerable to plaintiff in damages because the City maintained, controlled, and was in possession of, certain public streets and. ways and, among others, a street or thoroughfare known as N.E. 4th Court and "that it was and is the duty of said City, the defendant, to use reasonable care to keep and maintain the said streets, roads, avenues, courts and highways within the incorporate limits of said defendant municipality, including the street or court hereinbefore mentioned, in a safe condition for travel thereon by automobiles and similar vehicles and to keep the said streets, roads, avenues and highways, including the street hereinbefore mentioned, free, clear from defective and dangerous obstacles. That on the date aforesaid, at N.E. 60th Street, the said N.E. 4th Court abruptly ended so as to become what is commonly known as a dead end street and at the time and place persons traveling on said N.E. 4th Court would have to turn either east or west on N.E. 60th Street, because of such abrupt termination of N.E. 4th Court as aforesaid; that on the date aforesaid there was situated at the end of the pavement of N.E. 4th Court, where the same intersects on the north side of said N.E. 60th Street and directly in front of the point and off of the pavement on the north side of said N.E. 60th Street, where the said N.E. 4th Court would have continued on the north side of said N.E. 60th Street, had said N.E. 4th Court continued and not ended abruptly as aforesaid, a pile of

lumber known as crossties, were then and there at the time and place mentioned, dark in color, being old and discharged;

That said condition as described as aforesaid, of the said N.E. 4th Court at N.E. 60th Street had become a public menace because said defective and dangerous condition had existed for a long time prior to the date of the 19th day of September, A.D. 1934, to-wit: several months;".

It is then alleged that the City knew, or should have known, of such condition and that "at the time and place aforesaid, that after dark in the absence of artificial light, said N.E. 4th Court at N.E. 60th Street as aforesaid is dark at said point and said abrupt end of N.E. 4th Court and the said cross ties as aforesaid, constituted and were and had for a long period of time prior to the date herein alleged as alleged aforesaid, constituted a dangerous menace to persons traveling in vehicles north on said N.E. 4th Court and at N.E. 60th Street, because persons traveling at said time and place must turn east or west on said N.E. 60th Street, and was particularly dangerous to persons traveling in vehicles who are unaware or unmindful of the fact that N.E. 4th Court abruptly ended at said point and that said cross ties were situated and located as hereinbefore alleged; That it was the duty of the defendant, City of Miami, because the said condition had existed so long as to become a menace to travelers as aforesaid, all which was known to said defendant or in the exercise of reasonable diligence should have been known, so that it was the duty of the defendant to place barrier, barriers, lights, warning signs, caution notice or barrier sign at said point so as to warn persons traveling north on said N.E.

4th Court at the abrupt end thereof at N.E. 60th Street and of the existence of the said cross ties situated as hereinbefore alleged, but the defendant, City of Miami, carelessly and negligently suffered and permitted the said condition to exist at said point, unprotected and unguarded, without any barrier, barriers, lights, warning signs or barrier signs or warning of any kind, and to remain a menace to the lives and safety of persons traveling in vehicles north on said N.E. 4th Court and at the abrupt end thereon on N.E. 60th Street as aforesaid;".

It is then alleged that at about 12:00 o'clock at night on September 19th, 1934, plaintiff was an invited guest and passenger in a certain motor vehicle then being operated north on N.E. 4th Court by one Ray Osman and that by reason of the premises aforesaid and as the proximate result of such negligence of the defendant City, the automobile was propelled into and against the pile of cross-ties and there overturned, whereby the plaintiff was greatly injured.

The injuries are described in detail and the resulting damages are specifically set forth.

To this declaration defendant filed numerous pleas, among which was the plea of "not guilty" and a 16th plea which averred:

"This defendant further alleges and says that a municipal ordinance of the City of Miami makes it unlawful to drive an automobile at a rate of speed in excess of twenty-five miles per hour on North East 4th Court, and that the driver of the automobile referred to in plaintiff's declaration carelessly and negligently violated said ordinance and carelessly and negligently operated said automobile at a rate of speed in excess of twenty-five miles per hour, and that such

negligence and carelessness was the sole proximate cause of plaintiff's injury."

We think the record clearly establishes both these pleas. (In fact, the 16th plea presents no more than the general issue.)

The facts of the case, in short, were:

The plaintiff, in company with four other men, one of whom was Roy Osman, were apparently joy riding around the streets of Miami in the night time. Osman was driving the automobile. While they were driving adong with the then intention of returning to their homes they were hailed by a woman who told them, in effect, that she had a fight with her husband and asked them to take her to a certain place. With the apparent consent of all parties, they took her into the automobile with them. She sat with the driver and another man on the front seat, while plaintiff and two other men occupied the back seat. They immediately discovered that the woman was in an intoxicated condition. They took her to the place where she then said she wanted to go and waited for her to ascertain whether or not she could stop there. She could not arrange to do so. She then asked the party to take her to another place. They complied with that request, and at the second place she met with the same result, the people there would not take her in. She then requested them to take her to a distant part of Miami to the home of her sister which she said was on N.E. 4th Court. This they agreed to do and under the woman's directions drove out to N.E. 4th Court, which was a short street, turned into the street and proceeded along that street at a high rate of speed. The street came to what is called a dead end. But the driver was driving so rapidly that when he discovered

the street was a dead end street he was unable to stop the automobile. He applied his brakes and the car wheels skidded for 45 feet or more, then struck the natural sandy soil and woods at the end of the street, ran 18 feet further and collided with a pile of timber. The woman was killed and the plaintiff was severely injured. Thereafter, the plaintiff brought this suit.

It appears that the automobile involved in this case was traveling at a speed of more than 45 miles per hour when the brakes were applied. The record shows that such speed was unlawful at that time and place. Aside from this, however, the record shows that the driver of the automobile failed to keep his automobile at such speed and under such control as to be able to stop it within the range of his vision. Had he complied with this requirement, there would have been no accident.

It may be stated, as a settled rule of law, that in cases involving injury received in traveling public streets the Municipality is liable only for the natural and probable consequences such as might and should have been foreseen as likely to result from the alleged negligent Act complained of. See Waldorf v. City of Alhambra, 6 Cal. App. (2nd) 522, 45 Pac. (2nd) 207, 209; Robertson v. City of Long Beach, 19 Cal. App. Rep. (2nd) 676, 66 Pac. (2nd) 167; Watkins, Administrator, v. City of Catlettsburg, 243 Ky. 197, 47 S.W. (2nd) 1032, and cases there cited; Camp v. Allegheny County, 263 Pa. Rep. 276, 106 Atl. 314. Also Heister v. Fawn Tp. (Penn.) 42 Atl. 121; Wessels v. Stevens County (Wash.), 188 Pac. 490; Miner v. Town of Rolling, (Wis.), 167 N.W. 242; Pedigo v. City of Chattanooga (Tenn.), 64 S.W. (2d) 207; Brooks v. City of Monterey (Calif.) 290 Pac. Reporter 540; Lundy v.

City Council of Augusta (Ga.), 181 S.E. 237. Also Stark v. Holtzclaw, 90 Fla. 207, 105 So. 330, 41 A.L.R. 1323; Benedict Pineapple Co. v. Atlantic Coast Line R. Co., 55 Fla. 514, 46 Sou. 732, 20 L.R.A. (N.S.) 92; Western Union Tel. Co. v. Taylor, 94 Fla. 841, 114 Sou. 529; Woodberry v. Tampa Water Works Co., 57 Fla. 249, 49 Sou. 556, 21 L.R.A., (N.S.) 1037; Director General of Railroads v. Into, 83 Fla. 377, 91 Sou. 269.

Our conclusion is, after a careful study of the record and applying the legal principles enunciated in the cases above cited, that the City was guilty of no actionable negligence. There was no reason for the City to assume that anyone with ordinary intelligence would drive down that street at such a rate of speed as to run an automobile beyond the end of the street and come in contact with a pile of timbers which was plainly visible for a long distance from the end of the street. (It appears that the timbers were 12 inches square and some 10 or 12 feet long. Some of these timbers lay with end toward the street and others lay crosswise, the pile being approximately 3 feet high.) The very name of the street, N.E. 4th *Court,* indicated that it was a *cul de sac.* "Court" when used in connection with a street indicates "a short street; a blind alley" (Practical Standard Dictionary); "An open space like a *short street* enclosed by the dwellings or other buildings that face upon it," (Webster's International Dictionary, 2nd Ed., Unabridged).

The rationale of the enunciations found in the authorities cited, supra, is to the effect that a municipality is bound to use only ordinary care in the construction and maintenance of its highways and to construct guard rails where their absence would leave the highway unsafe for ordinary travel.

As we read the record in this case, it shows that if the City had erected a barrier at the end of this short street it would have done no good; but, so far as this occurrence was concerned, the automobile would just have struck such barrier a little earlier than it did strike the pile of timber.

We recognize the rule that the question of whether or not the duty rested on the municipality to erect a barrier at the locus in quo is one for the jury to determine. However, when such question is resolved by the jury in the affirmative without legal basis for such finding, and when in truth and fact no reasonable cause exists or no condition is shown which warrants such conclusion, the finding will not be sustained.

The record, which includes two photographs, shows that the end of the street was abutted by practically level ground which was grown up in grass, palmetto, small trees, and that the pile of timber above referred to was, as heretofore stated, some 18 or 20 feet out in this natural growth, all of which was plainly visible to one traveling upon the street at least 500 feet before reaching the end of the street.

It was the duty of the driver of the automobile to keep his automobile under such control as it could be at any time stopped within the range of his vision. This duty the driver of the automobile failed to perform, but on the contrary, drove at such a rate of speed that he could not stop the automobile after seeing the obstruction beyond the end of the street. The negligence of the driver of the automobile was the sole proximate cause of the injury.

The judgment should, therefore, be reversed and the cause remanded.

It is so ordered.

BROWN, C. J., WHITFIELD and ADAMS, JJ., concur.