CITY OF OKLAHOMA CITY v. BAKER.

No. 31329.   Nov. 21, 1944.

Rehearing Denied Jan. 23, 1945.

Application for Leave to File Second Petition for Rehearing Denied March 20, 1945.

*156 P. 2d 612.*

A. L. Jeffrey, Municipal Counselor, and John M. Lawrence, Asst. Municipal Counselor, both of Oklahoma City, for plaintiff in error.

Fred E. Suits, of Oklahoma City, for defendant in error.

BAYLESS, J., The city of Oklahoma City appeals from a judgment, based on the verdict of a jury, in favor of Evelyne Baker. Baker sued for damages suffered from injuries received when an automobile in which she was riding ran into a water drain on the southwest corner of the intersection of Pennsylvania avenue and 38th street in Oklahoma City. She alleged that the city was negligent in failing to observe the duty it owed to the users of said streets to keep said streets safe. In its brief here city does not debate the issue of fact whether the particular place was safe within the meaning of that term as applied to the users thereof; and makes its argument upon the rule of law that even if it was negligent in that respect, its negligence was not the proximate cause of the injury, but the injury was primarily and proximately caused by the intervening, independent act of a third party, to wit, the driver of the automobile.

There is very little conflict in the evidence. 38th and 39th streets run east and west, while Pennsylvania avenue runs north and south and ends as it intersects 38th street. 38th street is a graded, dirt road. Pennsylvania avenue is paved, the slab being 36 feet wide. Along the south side of 38th street, and on the east and west sides of Pennsylvania avenue, is a water drain, or drainage ditch that passes under Pennsylvania, or the intersection of the two streets, through a culvert. The west ditch as it enters the culvert is involved, so we direct our attention to it. The various witnesses testified that this ditch, where the car dropped into it, was three or four feet deep. We take the following data from Baker's exhibit 7. The paving ends before the two streets intersect and Pennsylvania avenue from the end of the paving northwards into the intersection is also a graded dirt road. There are about 15 feet of this dirt road from the end of the pavement to an imaginary line drawn east and west across

Pennsylvania avenue from the south end of the ditch, and about 20 feet from that line to the approximate south line of 38th street. The dirt road is about 22 feet wide where it begins at the end of the paving, it gradually narrows some until it reaches the aforementioned imaginary line, at which point it is about 19½ feet wide, and thereafter it gradually broadens until it is absorbed into the intersection. All of these dimensions are borne out by the photographs. The witnesses disagree about the number and type of warning signs. It is not disputed that a sign on the north side of 38th street warned travelers of the end of Pennsylvania avenue. All of this evidence relates to traffic signs for north-bound traffic. It is admitted by all that between 37th street and this intersection there are some warning signs, but their location and whether "stop" or "slow" warnings are in dispute. It is not contended that there is a rail or barrier around this ditch or that there is a warning sign on its side warning travelers approaching from the south of its existence.

The undisputed evidence of the plaintiff and her witnesses is that this accident happened about 11 o'clock or a little later in the night, while they were going north on Pennsylvania avenue with the intention of getting to 39th street. They all agree it was cold, rainy, snowy, and bad driving conditions prevailed. The driver testified that when he started north on Pennsylvania avenue he believed it was a through street, but observed signs about 40 yards south of the intersection warning him otherwise, and that he approached the intersection with this knowledge and with the intent to turn left or to the west. He testified he did not see this ditch and did not see any warning signs of its existence.

Addressing ourselves to the law applicable, we begin by observing that the parties do not differ about the fundamental duty owed by city to plaintiff, but they do differ materially with respect to the application of the fundamental rule to these facts.

The general rule is that a municipal corporation must exercise ordinary care to keep its streets in a reasonably safe condition for ordinary use by the public. City of Picher v. Barrett, 120 Okla. 66, 249 P. 739, and the earlier decisions cited therein; City of Seminole v. Mooring, 185 Okla. 359, 91 P. 2d 1091, and the decisions and authorities cited therein.

It is to be observed that it is ordinary use by the public that is protected. Ordinary use by the public is that use which conforms to ordinary care and prudence on the part of the users for their own protection, and as it is further governed by specific laws regulating use. In other words, a municipal corporation is not required to keep its streets in a condition that protects the users from a use that is not ordinary. A municipality is not obliged to respond in damages for injuries that occur to users of its streets when the use from which the injury arose is one not to be expected. Cyc. of Auto. Law and Prac., Blashfield (Perm. Ed.) sections 2552, 2592, 3192 and 3341.

The rule contended for by city that a person who suffers a condition to exist that is a violation of its duty is not liable for an injury suffered therefrom where the act of an independent person has intervened is limited by a factor that ties into the notion of ordinary use above stated. If the intervening act of the independent person is one that reasonably might have been expected or anticipated, in the ordinary course of events, then the negligence involved in the breach of duty represented by the existing condition is regarded as a proximate cause and liability follows. Otherwise, not. Our decision in Oklahoma Nat. Gas Co. v. Courtney, 182 Okla. 582, 79 P. 2d 235, illustrates this point. The rule stated in syllabus 3 of that opinion explains clearly where the original wrongful act is the proximate cause notwithstanding an intervening agency:

"Where there is an intervening, responsible agency, which directly produces the injury, as in this case, the

question as to whether the original negligence is to be regarded as the proximate cause of the injury, or only as a condition, or remote cause, is to be determined by ascertaining whether the agency which intervened was of such a character, and the circumstances under which it occurred were such, that it might have been reasonably expected that such agency or a similar one would intervene in such a way as to be likely to produce an injury similar to the one actually caused. If, under the circumstances, the intervention of such an agency in the manner stated might reasonably have been expected in the usual course of events, and according to common experience, then the chain of causation, extending from the original wrongful act to the injury, is not broken by the independent, intervening agency, and the original wrongful act will be treated as the proximate cause."

If a given situation fits within this rule, liability attaches, whereas if it falls without it, no liability ensues.

The ordinances of the city governing the use of streets and turning on intersections oblige the drivers of automobiles to keep to the right side of the road, and in turning into an intersection the driver must keep to the right of the center thereof. If he had done this, he would not have driven into a ditch at the southwest corner of the intersection. In the absence of such an ordinance, ordinary care and prudence would have dictated that he use the street and intersection in a similar manner to that prescribed in the ordinance. Thus his act of driving on the left side of the road and in turning into the ditch in the southwest corner of the intersection, driving from the south to the north as he was, was the act that caused the injury. Conceding the existence of the negligent condition, this act of the driver's was one not to be expected from the ordinary use of the road. Millstead v. City of New Orleans (La. App.) 146 So. 492, and Rodkey v. City of Escondido, 8 Cal. 2d 685, 67 P. 2d 1053.

The negligence of the city not being the proximate cause of the injury to plaintiff, but said injury coming from the intervening act of an independent third person, no liability exists on the part of the city for the damages suffered by plaintiff.

The judgment appealed from is reversed and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

CORN, C. J., GIBSON, V. C. J., and RILEY and WELCH, JJ., concur. OSBORN, HURST, DAVISON, and ARNOLD, JJ., dissent.

---

ARNOLD, J. (dissenting). In conformity with and in support of her allegations the plaintiff introduced evidence reasonably tending to support the finding of the jury that her injuries were proximately occasioned by the negligence of the defendant city. The evidence introduced by her and the reasonable inferences to be drawn therefrom reasonably tend to show that Pennsylvania avenue runs north, is paved and dead-ends at the north line of 38th street. Some distance south of the intersection of Pennsylania avenue and 38th street the pavement ends and the traveled position of Pennsylvania avenue couverges considerably before the interesction is reached; extending along the south side of 38th street, eastward and westward, from the point where Pennsylvania avenue and 38th street intersect, there is a drainage ditch for the purpose of carrying off surface water; a culvert under Pennsylvania avenue makes the ditch continuous; there is a large hole or depression at each end of the culvert; the hole or excavation at the west end of the culvert or southwest corner of the intersection has eroded and extended several feet into the intersection and the surface of the ground slopes toward the hole; because of the drainage ditch on the north side of 38th street, the convergence of the traveled portion of Pennsylvania avenue and 38th street and the drainage ditch on the south side of 38th and the erosion at the ends of the culvert across Pennsylvania at the point located, it was impossible to make a left-hand turn in the intersection around the center of the intersection and there

was no violation of the ordinance pleaded and proved; that the driver of the car in which plaintiff was riding as a guest did not attempt to go around the center of the intersection, but upon sudden notice of the dead-end sign in the middle of Pennsylvania avenue, if extended north of 38th street, turned westward upon entering the intersection, encountered the sloping area of the intersection and the eroded portion of the street leading to the hole or excavation at the end of the culvert and his car skidded into the excavation; that no other signs of warning were near the intersection and there were no barricades around the hole; that these conditions had existed for a long time and the city had knowledge thereof or with the exercise of ordinary diligence would have been apprised of the situation; that the weather was inclement and the ground slippery throughout the intersection; that such an occurrence was reasonably to be expected under all the circumstances prevailing.

The city constructed the street and the drainage ditches and therefore created the general physical situation existing at the intersection of the streets involved. It was its duty to maintain the streets in a reasonably safe condition and protect the traveling public against the unusual hazards thereof by proper barricades or signals. Whether a municipality has been negligent in either regard is ordinarily a question for the jury where there is any testimony reasonably tending to show failure to perform either duty imposed. The city admits its knowledge of the general physical situation and that it had maintained for a long time. It does not question the soundness of the foregoing stated duties. It contends only that there was no proximate relationship of the negligence alleged and the injuries complained of, and that the trial court erred in refusing its proffered instruction on contributory negligence.

The city did not plead nor does it contend that the negligence, if any, of plaintiff's driver was her negligence; if he were negligent and his negligence concurred with the negligence of the city, his concurring negligence would in no wise excuse the city.

The jury in this case and the trial judge no doubt concluded that the physical situation existing at the intersection and the absence of proper warning signals caused the driver of the car in which plaintiff was riding to make the turn that he attempted in the manner described by him and his car was caused to skid into the excavation by reason of the eroded and sloping condition of the surface of the intersection. Surely this is a reasonable conclusion if the testimony of plaintiff's witnesses was believed by the jury.

Proximate cause being governed by the same rule as the existence of the negligence alleged and relied upon, the issue was properly submitted to the jury; there being some testimony reasonably tending to support the jury's determination that there was proximate relationship, the verdict and judgment should be sustained.

The cases cited by the defendant city present very different fact situations in my judgment. They present generally situations wherein an independent intervening cause was wholly to blame for the occurrence which resulted in injury and the accident would have occurred even though the defendant had not been negligent.

In the cited cases we held that the negligence alleged did not cause or contribute to the actual cause of the accident. Not so here. The city's alleged negligence as hereinbefore demonstrated was reasonably determined by the jury to have caused the driver's car to skid into the large hole at the end of the culvert. If this be true, there can be no doubt of the proximate relationship of plaintiff's injuries and the negligence of the city.

There was no evidence of contributory negligence on the part of the plaintiff, so under our rule announced first in Miller v. Price, 168 Okla. 452, 33 P. 2d 624, and since consistently

followed by us — though the author doubts the soundness of the rule — the trial court correctly refused the proffered instruction on contributory negligence. The city concedes the soundness of the rule of the Miller Case, supra, but only contends in this connection that the rule is inapplicable in this case for the reason there was evidence sufficent to raise the issue.

In view of the evidence in this case the effect of the opinion of the majority amounts to a determination by us of the weight to be given the facts, circumstances, and reasonable inferences to be given the testimony. Such an invasion of the province of the jury is, in my judgment, very dangerous. I therefore respectfully dissent.

HURST, J., concurs.