354 P.2d 172

Don C. SMITH and Alice V. Smith, husband and wife, Plaintiffs-Appellants,

v.

Merrill Kim SHARP, Merrill J. Sharp and City of Pocatello, a Municipal Corporation, Defendants and Respondents.

George L. STONE and Elvera Stone, husband and wife, Plaintiffs-Appellants,

v.

Merrill Kim SHARP, Merrill J. Sharp and Merrill Kim Sharp by Merrill J. Sharp, Guardian ad litem, and City of Pocatello, a Municipal Corporation, Defendants and Respondents.

Nos. 8842, 8846.

Supreme Court of Idaho.

June 23, 1960.

Rehearing Denied Aug. 2, 1960.

O. R. Baum, Ben Peterson, Ruby Y. Brown, William D. Olson, L. F. Racine and Robert C. Huntley, Pocatello, for appellants

Merrill & Merrill, Pocatello, for defendants Sharp.

Gerald W. Olson and Milton E. Zener, Pocatello, for City of Pocatello.

TAYLOR, Chief Justice.

These actions were brought by the respective parents (appellants) of Marilee Smith and Verda Mae Stone, teen-age girls, who were drowned in the Portneuf river in the defendant (respondent) City of Pocatello, when the car in which they were passengers went through the barrier at the dead end of South Hayes street and plunged into the river, at about 9:40 p. m., February 10, 1958.

The car was driven by defendant Merrill Kim Sharp. The allegations of negligence in the two complaints are the same, and in the Stone case are set out as follows:

"That at said time and place the defendant, Merrill Kim Sharp, operated and drove his said automobile recklessly, negligently, and unlawfully and with a reckless disregard for the safety of

the occupants of said automobile, and particularly Verda Mae Stone, deceased, in that said defendant operated the vehicle at an excessive rate of speed, to-wit: In excess of 25 miles per hour, in the nighttime, without lights, and without keeping any lookout whatsoever as to the roadway ahead, and without maintaining any control whatsoever of the vehicle, and in such manner as to drive his car into a steel post barricade between South Hayes Street and the Portneuf River and to so bend said posts as to cause the car to proceed through the posts and into the Portneuf River. That at said time and place, the defendant, Merrill Kim Sharp, deliberately and intentionally operated the vehicle at an excessive speed and without lights.

"That the defendant, City of Pocatello, was negligent and careless in that in the supervision and control of the streets and particularly its control of South Hayes Street at the point where South Hayes Street met with the Portneuf River, the City of Pocatello, on February 10, 1958, wholly failed to place or maintain any proper barriers and lighting, which would constitute a sufficient warning to the traveling public, and particularly Verda Mae Stone, deceased. That said South Hayes Street at the point where it meets the river is a dead-end street and that the metal posts which the City of Pocatello maintained between South Hayes Street and the Portneuf River were not equipped with reflectors of any type or kind, or any other device to appraise people traveling said South Hayes Street, and particularly Verda Mae Stone, deceased, that the street was a dead-end street and that the river was immediately in front of the end of the street. That, in fact, said method of maintaining South Hayes Street at the location described was in the nighttime a trap to the traveling public for the reason that across the river the traveling public could see a street continuing, as well as street lights, and one traveling on South Hayes Street in a northerly direction would be unable by reason of the lack of safeguards maintained by the City of Pocatello to know and determine that the street ended at the river. That the City of Pocatello, furthermore, was negligent and careless in that it failed to maintain any stop signs and dead-end signs at the intersection of West Halliday and South Hayes Streets to apprise the traveling public at such intersection of the ending of South Hayes Street at the river; and failed to maintain any signs or dead-end signs at the point where South Hayes Street met the Portneuf River."

The trial court sustained general demurrers and dismissed the actions as to the defendant City of Pocatello. From judgments of dismissal plaintiffs appeal.

◼ The issue presented is whether or not the facts pleaded are sufficient to present a jury question as to the liability of the city; that is, whether or not the alleged negligence of the city was a proximate cause of the deaths of plaintiffs' decedents. The fundamental duty of the city in the premises is imposed by I.C. § 50–1141, which provides:

"The city councils of cities and boards of trustees of villages shall have the care, supervision and control of all public highways, bridges, streets, alleys, public squares and commons within the corporate limits, and shall cause the same to be kept open and in repair and free from nuisances: * * *."

In Carson v. City of Genesee, 9 Idaho 244, 74 P. 862, 864, this court construed the duty imposed by the statute to require municipal corporations to keep the streets within their limits "in a reasonably safe condition for use by travelers in the usual modes." That rule has continued to be the rule in this jurisdiction. Baillie v. City of Wallace, 24 Idaho 706, 135 P. 850; Hendrix v. City of Twin Falls, 54 Idaho 130, 29 P.2d 352; Pearson v. Boise City, 80 Idaho 494, 333 P.2d 998.

Arising out of this basic duty and as a corollary thereof, it is the duty of a municipality to erect and maintain barriers or warning devices, where necessary to make the street reasonably safe for travelers using ordinary care, and at such places as would be unsafe for usual and ordinary travel without such barriers or warning devices. Pardini v. City of Reno, 50 Nev. 392, 263 P. 768; City of Phoenix v. Mayfield, 41 Ariz. 537, 20 P.2d 296; City of Seminole v. Mooring, 185 Okl. 359, 91 P.2d 1091.

◼ Nothing appears in either complaint to indicate a relationship between the deceased girls and the driver Sharp, by reason of which the negligence of Sharp could be imputed to them. The city does not contend that the negligence of Sharp is imputable to plaintiffs' decedents. However, the municipality is not an insurer of the safety of travelers upon its streets. Miller v. Village of Mullan, 17 Idaho 28, 104 P. 660, 19 Ann.Cas. 1107; Davison v. Snohomish County, 149 Wash. 109, 270 P. 422; Yocum v. Town of Bloomsburg, 289 Pa. 512, 137 A. 668; Haney v. Town of Lincolnton, 207 N.C. 282, 176 S.E. 573; 5A Blashfield Cyclopedia of Automobile Law & Practice, § 3192. The statute as above construed requires only that it exercise reasonable and ordinary care to keep its streets in a reasonably safe condition for ordinary travel. Miller v. Village of Mullan, supra; Smith v. City of Rexburg, 24 Idaho 176, 132 P. 1153, Ann.Cas.1915B, 276.

■ Negligence, to be actionable, must be the proximate cause, or a contributing proximate cause, of plaintiff's injury. Chatterton v. Pocatello Post, 70 Idaho 480, 223 P.2d 389, 20 A.L.R.2d 783; Clark v. Chrishop, 72 Idaho 340, 241 P.2d 171.

■ Where negligent acts of two or more persons combine to cause injury to another under circumstances such that the negligence of each becomes proximate cause of the injury, the tort-feasors may become jointly and severally liable to the injured party. Valles v. Union Pac. R. Co., 72 Idaho 231, 238 P.2d 1154; Clark v. Tarr, 75 Idaho 251, 270 P.2d 1016; Russell v. City of Idaho Falls, 78 Idaho 466, 305 P.2d 740; Hoffman v. Barker, 79 Idaho 339, 317 P.2d 335; Tobin v. City of Seattle, 127 Wash. 664, 221 P. 583; United States v. Marshall, 9 Cir., 230 F.2d 183.

"Ordinarily, the proximate cause of an injury is a question of fact for the jury or the court as trier of the facts. Ford v. Connell, 69 Idaho 183, 204 P.2d 1019; Mason v. Hillsdale Highway Dist., 65 Idaho 833, 154 P.2d 490; but in the absence of evidence showing or tending to show a causal connection between defendant's negligence and plaintiff's injury, defendant, as a matter of law, cannot be charged with liability. Chatterton v. Pocatello Post, supra." Clark v. Chrishop, 72 Idaho 340, at page 344, 241 P.2d 171, at page 173.

■ Where the facts established, or undisputed, and the inferences to be drawn therefrom, are such as to preclude reasonable doubt or difference of opinion, the question of proximate cause becomes one of law for the court. Bracy v. Lund, 197 Wash. 188, 84 P.2d 670; Cook v. Seidenverg, 36 Wash.2d 256, 217 P.2d 799; United States v. Marshall, supra.

It is the position of the defendant city that, assuming the complaints sufficient to charge negligence on the part of the city, such negligence was not the proximate cause of the accident, and that the negligence of Sharp was such active, intervening negligence as to become the superseding proximate cause of the injury.

■ Proximate cause is defined as the "cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred." 65 C.J.S. Negligence § 103, p. 645.

" 'It may be stated as a general rule that negligence which merely furnishes the condition or occasion upon which injuries are received, but does not put in motion the agency by which the injuries are inflicted is not the proximate cause thereof. 38 Am.Jur. 702.' " Clark v. Chrishop, 72 Idaho 340, at pages 342–343, 241 P.2d 171, at page 172.

"There can be no liability for an act of negligence except where such act is the proximate cause, and where an intervening act of force is put in motion by another, and for which defendant is not responsible, there can be no recovery." Chatterton v. Pocatello Post, 70 Idaho 480, 484, 223 P.2d 389, 391, 20 A.L.R.2d 783.

"A superseding cause is an act of third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.

"*Comment*:

\* \* \* \* \* \*

"b. A superseding cause relieves the actor from liability, irrespective of whether his antecedent negligence was or was not a substantial factor in bringing about the harm. Therefore, if in looking back from the harm and tracing the sequence of events by which it was produced, it is found that a superseding cause has operated, there is no need of determining whether the actor's antecedent conduct was or was not a substantial factor in bringing about the harm." Restatement, Torts, § 440.

"The following considerations are of importance in determining whether an intervening force is a superseding cause of harm to another:

\* \* \* \* \* \*

"(b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;

"(c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is an act done as a normal response to such a situation;

"(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

"(e) the fact that the intervening force is due to an act of a third person which is wrongful towards the other and as such subjects the third person to liability to him;

"(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion." Restatement, Torts, § 442.

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's neg-

ligent conduct is a substantial factor in bringing about, if

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

"(c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent." Restatement, Torts, § 447.

"The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct should have realized the likelihood that such a situation might be created thereby and that a third person might avail himself of the opportunity to commit such a tort or crime." Restatement, Torts, § 448.

The conduct of Sharp was highly extraordinary and not a normal response to any stimulus of the situation created by the defendant city. See Restatement of Torts, § 443, Comments a and b. "Men of ordinary experience and reasonable judgment, looking at the matter after the event and taking into account the prevalence of that 'occasional negligence, which is one of the incidents of human life,' would" regard it as extraordinary that Sharp would knowingly and intentionally drive the death car at excessive speed, in the nighttime, without lights and without keeping any lookout whatsoever as to the roadway ahead. See Restatement of Torts, § 447, Clause (c), and Comment.

The negligence of Sharp was an intervening force operating independently of any situation created by the city. See Restatement of Torts, § 441, Comment c. The intervening negligence of Sharp was wrongful toward the passengers in the automobile.

The acts of the defendant city, in maintaining South Hayes street with its dead end upon the bank of the river and with a steel post barrier, were not such that the city should have realized that a third person, such as Sharp, would knowingly and intentionally operate a motor vehicle thereon, in the nighttime, at excessive speed, without lights and without keeping a lookout ahead. The intentional unlawful and tortious conduct of Sharp, being altogether extraordinary and unusual, was the superseding cause of the injury which resulted. Restatement of Torts, § 447, (b), (c), and Comment, § 448 Comment and Illustration.

In Salt River Valley Water Users' Ass'n v. Cornum, 49 Ariz. 1, 63 P.2d 639, the court said:

"It is the well-established rule of law that defendant's negligence is too remote to constitute proximate cause of an injury when an independent illegal act of a third person, which could not be reasonably foreseen and without which such injury would not have been sustained, intervenes." At page 646 of 63 P.2d.

"But, even where the highest degree of care is demanded, still the one from whom it is due is bound to guard only against those occurrences which can reasonably be anticipated by the utmost foresight. It has been well said that, 'if men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture, be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things.' Pollock, Torts, 8th ed. 41." Atchison, T. & S. F. R. Co. v. Calhoun, 213 U.S. 1, 29 S.Ct. 321, 323, 53 L.Ed. 671.

In Scrivner v. Boise Payette Lumber Co., 46 Idaho 334, 268 P. 19, this court said:

"The principles to be drawn from the authorities are that, in order that a subsequent independent act of negligence shall not displace a former one as the proximate cause, or to constitute the first of two acts of negligence the proximate cause of an injury, it is necessary that the succeeding act of negligence should be so connected with the first in time and nature as to make it plain that the damage was the natural and probable consequence of the original wrongful act or omission, and that to establish this the original negligence must have been such that it must have been known to or anticipated by the original wrongdoer that, in the natural course of human conduct, a succeeding act of negligence was at least likely to be committed, or, as said in Lynch v. Nurdin, supra, [12 Q.B. (Ad. & E., N.S.) 29] it was extremely probable that some other person would unjustifiably set in motion the dangerous instrumentality or negligent condition created by the original wrongdoer, and thus cause an injury." 46 Idaho at pages 345, 346, 268 P. at page 22.

In Oklahoma City v. Baker, 195 Okl. 238, 156 P.2d 612, the plaintiff was injured when the car in which she was a passenger ran into an open drain ditch at the southwest corner of an intersection. The acci-

dent occurred at about 11:00 o'clock p. m. on a cold, rainy, snowy night. The driver traveling north and intending to turn west at the intersection, violated an ordinance requiring him to keep to the right of the center of the intersection, cut across the corner and ran into the ditch. There were no signs warning of the presence of the ditch, nor any barrier around it. After referring to the violation of the ordinance, the court said:

"Thus his act of driving on the left side of the road and in turning into the ditch in the southwest corner of the intersection, driving from the south to the north as he was, was the act that caused the injury. Conceding the existence of the negligent condition, this act of the driver's was one not to be expected from the ordinary use of the road." 156 P.2d at page 615.

"Where the duty is regarded as ministerial rather than governmental, the municipality is required to exercise only ordinary care to keep all the streets reasonably safe for ordinary travel, and, if it fulfills this obligation, the mere fact that some condition of the streets exists which, in conjunction with the recklessness of the driver, causes an injury to him, will not expose the municipality to liability." 5A Blashfield Cyclopedia of Automobile Law and Practice, § 3192.

In City of Miami v. Saunders, 151 Fla. 699, 10 So.2d 326, plaintiff was injured when the automobile in which he was a passenger overran a dead-end street and crashed into a pile of crossties. The accident occurred at about 12:00 o'clock at night. There were no lights at the end of the street, nor warning signs or barricade; the evidence showed that the driver exceeded the speed limit of 25 miles per hour, by traveling more than 45 miles per hour, and failed to keep his car under such control that he could stop within the range of his vision. In holding that the negligence of the driver was the sole proximate cause of the injury, the court said:

"There was no reason for the City to assume that anyone with ordinary intelligence would drive down that street at such a rate of speed as to run an automobile beyond the end of the street and come in contact with a pile of timbers which was plainly visible for a long distance from the end of the street. * * *

"As we read the record in this case, it shows that if the City had erected a barrier at the end of this short street it would have done no good; but, so far as this occurrence was concerned, the automobile would just have struck such barrier a little earlier than it did strike the pile of timber." 10 So.2d at page 329.

Other decisions holding, in situations comparable to that here involved, that the antecedent negligence of defendant was superseded by the intervening negligence of a third party, are: Swain v. City of Spokane, 94 Wash. 616, 162 P. 991, L.R.A. 1917D, 754; Davison v. Snohomish County, 149 Wash. 109, 270 P. 422; Newman v. Steuernagel, 132 Cal.App. 417, 22 P.2d 780; McMillan v. Thompson, 140 Cal.App. 437, 35 P.2d 419; Bracy v. Lund, 197 Wash. 188, 84 P.2d 670; Rush v. City of Globe, 56 Ariz. 530, 109 P.2d 841; Cook v. Seidenverg, 36 Wash.2d 256, 217 P.2d 799; City of Dallas v. Maxwell, Tex.Com.App., 248 S.W. 667, 27 A.L.R. 927; Geisen v. Luce, 185 Minn. 479, 242 N.W. 8; Reaney v. Union County, 69 S.D. 392, 10 N.W.2d 762; Clouse v. County of Dawson, 161 Neb. 544, 74 N.W.2d 67, 55 A.L.R.2d 991; Falk v. Finkelman, 268 Mass. 524, 168 N.E. 89; Nuss v. State, 276 App.Div. 300, 94 N.Y.S. 2d 374; Heister v. Fawn Tp., 189 Pa. 253, 42 A. 121; Yocum v. Town of Bloomburg, 289 Pa. 512, 137 A. 668; Pilvelis v. Plains Tp., 140 Pa.Super. 561, 14 A.2d 557; St. John v. Kepler, 360 Pa. 528, 61 A.2d 875; Ault v. Pennsylvania R.R. Co., 381 Pa. 496, 113 A.2d 150; Haney v. Town of Lincolnton, 207 N.C. 282, 176 S.E. 573.

In Overton v. Wenatchee Beebe Orchard Co., 28 Wash.2d 377, 183 P.2d 473, 173 A.L.R. 616, plaintiff's decedent was killed when the car she was driving went over a 14-inch pipe and through a wood railing on a bridge owned by defendant. The guardrail was constructed of 4 by 4 inch posts with 2 by 4 inch rails and a 2 by 6 inch top rail. After holding that the owner of the bridge owed the same duty to those using it as a municipality owes to the public using its streets, the court quoted from Watkins' Adm'r v. City of Catlettsburg, 243 Ky. 197, 47 S.W.2d 1032, 1034, as follows:

"' * * * there is no duty to maintain a barrier of sufficient strength to resist the force of an automobile or to prevent it from going over an embankment alongside the highway, even though at a curve, presenting a hazardous condition. * * *

"'There was no duty on the part of the city of Catlettsburg, under the conditions presented in this case, to have maintained a guard or barrier. To have prevented the car going over the embankment into the river in this case would have required a wall of sufficient strength to withstand the force of the moving automobile and to have wrecked it. There was no duty to maintain such an obstruction. * * *'" 183 P.2d at page 479, 173 A.L.R. at page 624.

Referring to the facts before it, the court went on to say:

"Although nails were loose in the boards of which the guard rail was

constructed and some of the boards were warped, we find no evidence from which it may be even reasonably inferred that the automobile of the decedent would even have been slowed in its plunge through the side of the bridge; at the most that is a mere scintilla of evidence and not sufficient to support a verdict. The condition of the railing was not a proximate cause of the accident. However strong the railing may have been the accident would have happened. Whether the accident would have been more serious or less serious had decedent run into a barrier which would have withstood the impact of her automobile is mere conjecture, and a verdict or finding may not be based upon conjecture. Teater v. Seattle, 10 Wash. 327, 38 P. 1006. See also Cozzi v. Hooksett, 84 N.H. 530, 531, 153 A. 317, 155 A. 41." 183 P.2d at page 479, 173 A.L.R. at page 624.

The following authorities also support the proposition that there is no duty resting upon a municipality to erect barriers sufficient to withstand the impact of an automobile out of control or recklessly driven. Lang v. City of Troy, 256 App.Div. 743, 12 N.Y.S.2d 599; Camp v. Allegheny County, 263 Pa. 276, 106 A. 314; Yocum v. Town of Bloomsburg, 289 Pa. 512, 137 A. 668; Love v. City of Asheville, 210 N.C. 476, 187 S.E. 562; Swain v. City of Nashville, 170 Tenn. 99, 92 S.W.2d 405; Annotation 27 A.L.R. 937, V and VI; Annotation 86 A.L.R. 1389, V and VI; Annotation 173 A.L.R. 626, IV, V, VI

Plaintiffs' argument, that if the barrier had been sufficient to stop the Sharp car the girls might have been injured but not drowned, does not present a valid basis for a ruling against the city. As to whether decedents would have been killed or merely injured by the impact with such a barrier is entirely speculative. City of Dallas v. Maxwell, Tex.Com.App., 248 S.W. 667, 27 A.L.R. 927; Sylvester v. City of Milwaukee, 236 Wis. 539, 295 N.W. 696.

Plaintiffs cite Hillyard v. Utah By-Products Co., 1 Utah 2d 143, 263 P.2d 287, and Washington v. Kemp, 99 Ga.App. 635, 109 S.E.2d 294, in support of their contention that the alleged negligence of the defendant city was a continuing proximate cause of the accident. In the Hillyard case the driver of defendant's truck negligently parked it so that the rear end of the truck extended 5 feet onto the paved portion of a well-traveled arterial street. The plaintiff, a guest, was injured when his host, who had had "two beers" and was driving with a bottle of beer in one hand, at 50 miles per hour in a 25 mile zone, crashed into the truck. The host was following and seeking an opportunity to pass another vehicle proceeding in the same direction. When the followed vehicle abruptly moved to

the left to avoid the parked truck, the host first became aware of the presence of the truck, too late to avoid it. In holding that a jury question was presented as to whether the negligent parking of the truck constituted a proximate cause of the collision, the court called attention to the fact that the 5-foot intrusion of the truck upon the 12-foot-wide lane provided for eastbound traffic, left only 7 feet clearance between the rear end of the truck and the westbound traffic lane, and concluded that the parking of the truck amounted to a substantial obstruction of the highway, presenting a hazardous condition. As to foreseeability, the court said:

"It is not at all unlikely that cars approaching from opposite directions might reach the point simultaneously, resulting in a 'squeeze' for the eastbound car with barely inches clearance on either side. From this circumstance it might well have been foreseen that a natural and probable consequence would be some mishap of the general nature as that which did occur, which is the test to be applied." [263 P.2d 287.]

In distinguishing its ruling in the Hillyard case from its prior decision in Haarstrich v. Oregon Short Line R. Co., 70 Utah 552, 262 P. 100, the Utah court called attention to the fact that the parking of the truck in such manner as to occupy a portion of the traffic lane was an unlawful act; whereas, in the Haarstrich case the freight train with which the car involved collided, was *"lawfully occupying"* the crossing of the highway.

In Washington v. Kemp, supra, the defendant parked with a substantial portion of his vehicle within 12 feet of the center line of the highway. Two cars following were forced to stop, and a third, operated at 85 miles per hour by a driver under the influence of intoxicating liquor, crashed into the rear of the cars thus stopped, injuring the plaintiff, a passenger in one of the cars so stopped. In holding that defendant's parking was a continuing proximate cause, the court called attention to the fact that the manner of defendant's parking was a violation of statute, which created a "perilous situation," within the traveled way.

We have also considered Birks v. East Side Transfer Co., 194 Or. 7, 241 P.2d 120, 127; Gies v. Consolidated Freightways, 40 Wash.2d 488, 244 P.2d 248; Hill v. Wilson, 216 Ark. 179, 224 S.W.2d 797; Continental Southern Lines v. Klaas, 217 Miss. 795, 63 So.2d 211, 65 So.2d 575, 65 So.2d 833, 67 So.2d 256. In these cases also the fact that the antecedent negligence of the defendant was an *unlawful* act, was considered to be an important factor in determining that defendant was not insulated from liability by the intervening negli-

gence of a third person. In the Birks case the Oregon court said:

"In all of the cases in which the parking or stopping upon the roadway was done in contravention of an ordinance or a statute, it was deemed an act of negligence. The ordinances and statutes which prohibited the parking and stopping upon the roadway were held to be safety measures, and the courts recognized a cause of action in any traveler upon the thoroughfare whose injuries were the proximate result of a violation of the enactment." [194 Or. 7, 241 P.2d 127.]

Here the city is not charged with the violation of any statute, nor with any unlawful act. The city did not create the river, nor lay it across a traveled street. It was not unlawful for the city to maintain South Hayes street with its terminus on the bank of the river. Dead-end streets are not unlawful. It was not unlawful for the city to erect the barrier which it maintained at that point. It is charged that the barrier was not sufficient; the area was not sufficiently lighted; there were no reflectors on the steel barrier posts; no signs indicating the end of the street; and there were street lights and a street continuing on the other side of the river. Though some may amount to negligence, none of these conditions was unlawful.

It is evident from the allegations of the complaints that it was the unlawful operation of the Sharp automobile in the nighttime, at excessive speed, without lights, and without keeping a lookout to the road ahead, which proximately caused the accident. Neither reflectors, signs, nor an impenetrable barrier, would have been of much help to such a driver. Furthermore, a driver who was not keeping a lookout ahead most likely would not be misled by the lights or street across the river. Under such circumstances the condition across the river could not have been a proximate cause. A consideration of these facts impels us to the conclusion that the city was not required to foresee nor anticipate that anyone would operate an automobile upon South Hayes street in the manner in which the automobile involved was operated by defendant Sharp.

More in point is our own decision in Rowe v. Northern Pac. Ry. Co., 52 Idaho 649, 17 P.2d 352. In that case the plaintiff, a guest, was injured when the car in which he was riding crashed into a boxcar standing across the main street of Moscow. The accident occurred in the nighttime. Plaintiff claimed the defendant was negligent in failing to maintain an adequate light at the crossing, as required by a city ordinance. It was plaintiff's contention that the glare from the light maintained

by defendant blinded the vision of plaintiff and his host, driver, so that they were unable to see the obstruction until it was too late to avoid the collision. After referring to the facts that the plaintiff and his host were familiar with the crossing; the imposed duty to stop, look and listen; the speed at which the car was being driven, as indicated by the severity of the impact; and that the temporary stopping of railroad cars upon the crossing was not unlawful, this court said:

> "The conclusion is inescapable that, due to the unfortunate thoughtlessness of the car's occupants and their unwarranted assumption of a clearance at the time not apparent, the car came hurtling through the night with a momentum uncontrollable the remaining distance. The presence of the boxcar merely presented a condition: it was not the proximate cause of respondent's mishap. That cause lay primarily in the negligence of respondent and his host. (See citations.)" 52 Idaho at page 653, 17 P.2d at page 353.

Among the authorities supporting the foregoing conclusion, this court in the Rowe case cited St. Louis-San Francisco R. Co. v. Guthrie, 216 Ala. 613, 114 So. 215, 56 A.L.R. 1110. In that case the car in which plaintiff was a passenger ran into the side of a train temporarily standing across the highway on a dark, rainy night. The defendant provided no lights or flagman. In reversing a judgment for plaintiff the Alabama court said:

> "The rule is that, in the absence of statutory requirement, the mere leaving of a train across the highway without lights or other signals to disclose its presence there is not per se negligence, and that, as for injuries received by running into the train, the obstruction of the highway is not to be considered as the efficient cause of such injuries, but merely as a condition which in and of itself furnishes no cause of action, and the fact that the condition of obstruction is unreasonably prolonged makes no difference in the application of the rule. The rule sanctioned by the authorities to which we have referred is that, in order to charge the railroad with negligence in such a case, it must be shown that defendant's employees in charge of the train, in the exercise of reasonable care, ought to know that on account of darkness the cars upon the crossing are such an obstruction that people traveling along the highway in automobiles properly equipped with lights and carefully operated at a reasonable rate of speed would be likely to come into collision with them; in other words, the employees of the defendant, in the absence of some peculiar environment, are justified in believing that travelers

in automobiles properly lighted and driving at reasonable speed will observe the cars upon the crossing in time to avoid coming into collision with them." 114 So. at page 217, 56 A.L.R. at page 1113.

Plaintiffs further contend that the maintenance by the city of South Hayes street with its terminus upon the bank of the river under the circumstances pleaded, is a nuisance, rendering the city liable for the deaths resulting from the maintenance thereof. They cite I.C. §§ 50–1141, supra, and 52–101. The latter section, in material part provides:

"Anything which * * * unlawfully obstructs the free passage or use, in the customary manner, of any * * * street or highway, is a nuisance."

The city is not responsible for the existence of the river. The river is not maintained by the city as a part of the street. The obstruction is not in the street. Plaintiffs do not allege that any defect existed in South Hayes street which obstructed its "free passage or use, in the customary manner." Therefore, if it can be said that a nuisance existed at the terminus of the street, it was not a nuisance as a matter of law, nor a nuisance per se. Rowe v. City of Pocatello, 70 Idaho 343, 218 P.2d 695. It is not necessary to a decision herein to determine whether or not the condition

complained of might constitute a nuisance per accidens because if it were regarded as such the liability of the city arising therefrom would in such case necessarily depend upon negligence of the city, which was the proximate cause of plaintiffs' injury. Liability for a nuisance per accidens depends upon negligence. McFarlane v. City of Niagara Falls, 247 N.Y. 340, 160 N.E. 391, 57 A.L.R. 1; Taylor v. City of Cincinnati, 143 Ohio St. 426, 55 N.E.2d 724, 155 A.L.R. 44. Negligence, if any, on the part of the city, having been superseded, as the proximate cause of the injury, by the intervening negligence of defendant Sharp, it becomes immaterial whether the situation at the end of the street constituted a nuisance in fact or per accidens.

The judgments appealed from are affirmed.

Costs to respondents.

SMITH, KNUDSON and McFADDEN, JJ., concur.

McQUADE, J., dissents.

On Petition for Rehearing

TAYLOR, Chief Justice.

Upon consideration of appellants' petitions for rehearing we have concluded that plaintiffs should be allowed to amend their

complaints as against the defendant City of ·Pocatello.

The judgments sustaining the demurrers of the City of Pocatello are affirmed, and the judgments denying leave to amend and dismissing the actions are reversed and the causes are remanded with directions to the district court to grant plaintiffs leave to amend their complaints as against the City of Pocatello and to fix the time therefor.

Petition for rehearing denied August 2, 1960.

No costs allowed.

SMITH, KNUDSON, McQUADE and McFADDEN, JJ., concur.