McNULTY, JOSEPH P., Associate Judge.
There are two timely appeals in this court in the instant case. Appeal No. 7136 was instituted on May 6, 1966, from an unsigned Minute Book entry. Ordinarily, this would require a summary dismissal of the appeal.[1] Appellant, however, filed a second appeal, Appeal No. 7431, this one from a signed Final Judgment, and moved to consolidate both appeals. We grant the Motion to Consolidate and determine the appeal on its merits.
Plaintiff in a wrongful-death action brings her appeal from the judgment herein, entered on a jury verdict, in favor of the defendant-appellee. The facts, briefly stated, are that appellant’s husband, the decedent, was riding a bicycle at 9:00 o’clock at night in a northerly direction on a four-lane thoroughfare in the City of Tampa. Two lanes were provided for traffic moving northbound and two for traffic moving southbound, and the decedent was apparently proceeding in the right-hand, northbound lane. One of the appellee’s tractor-trailers was proceeding behind, and in the same direction as, the decedent. The tractor-trailer came upon the bicycle and struck it from the rear, killing the rider. The evidence further tended to establish that the vision of the appellee’s driver was obscured by the lights of oncoming vehicles. There is some evidence, also, bearing on a possible rebuttal to contributory negligence, that the decedent had undergone a brain operation known as a pre-frontal lobotomy following a mental collapse during World War II and, appellant contends, he was thereafter “oblivious to danger wherever he went.”
Appellant raises two points on appeal: first, that the trial court erred in refusing to charge the jury on the so-called “Range of Vision Rule;” and secondly, that the court erroneously charged the jury on the law relating to the culpability of one whose physical or mental ability to detect or appreciate dangers is impaired.
In considering the Range of Vision Rule referred to in appellant’s first point of appeal, we perceive the substance of her requested charge[2] to be that “ * * * it is the duty of a person driving upon a highway to so operate his automobile upon the highway as to be able to stop or control his car within the range of his vision, whatever the time of the day he may be driving.”[3] Variations of this rule have been *861 applied in a great variety of factual circumstances throughout the country,[4] among which is when a motor vehicle operator’s vision is obscured by the lights of oncoming vehicles.
Initially, we observe that the rule, as worded above, has apparently been accepted, in Florida, by usage, as a rule of law. The truth of the matter is, however, that it is not a rule of law, and, therefore, need not be given in charge. If it is a rule at all, it is a rule of the road which, along with similar rules,[5] the courts have recognized and employed as a commonly accepted standard of reasonableness, as distinguished from a standard of conduct, against which to measure the actions of a driver of a motor vehicle in the light of his paramount duty to exercise due care. The rule of law, on the other hand, as it relates to the standard of conduct imposed on the driver of a motor vehicle in such cases, was first stated in Mathers v. Botsford,[6] viz., that it is the duty of such driver “to exercise all ordinary and reasonable care and diligence to avoid injury to any one who might rightfully be on the road in front of him, even to the extent, if need be, of stopping his car if he could not see ahead of him because of the bright lights on the car he was meeting on the road. * * * ”
There is a clear distinction between the substance of the requested charge and the rule as quoted from Mathers, supra. In the former, failure to stop within the range of vision would constitute negligence in every case, as a matter of law; and would, in effect, make an absolute insurer of every temporarily blinded driver if, while so blinded, he crashes into a person or object, when he might, notwithstanding, be operating his motor vehicle as would any reasonable person in the same circumstances. This cannot be the law. Clearly, there are those circumstances where oncoming or blinding lights are of such sufficient duration and intensity as to require strict obedience to such a rule if the driver of a motor vehicle is to satisfy his duty of exercising ordinary care. Conversely, such conditions may be so sporadic or fleeting, and have such a brief effect on the driver, that strict obedience to the rule would result in frequent braking or changing of speeds, and, under crowded driving conditions, would be likely to create more hazards than it would avoid.
Under the rule as stated in. Mathers, on the other hand, the ultimate question of negligence is one of fact to be determined from all the evidence. That is to say, whether, in the face of all apparent circumstances, the driver of a motor vehicle ought to go “to the extent” of stopping his car if he is to satisfy his duty “to exercise all ordinary and reasonable care and diligence to avoid injury to anyone who might rightfully be on the road in front of him, * * *.”[7] This distinction was noted in Cook v. Mason,[8] in which the First District Court of Appeal observed;
“We recognize the validity of the Range of Vision Rule as stated in the above quotation from the Mathers case, but it must be noted that that rule merely lays dozvn the duty of the driver to exercise reasonable care and does not declare that such a driver is negligent as a matter of law, if while blinded by headlights he crashes into a person or an object. Under our court system in the present circumstances the question still remains to be *862 determined by the jury in a law action whether the driver has in fact exercised reasonable care and properly performed the duty imposed upon him by the rule. It should be noted that in the Mathers case the Supreme Court upheld the judgment after the factual questions as to negligence and liability had been resolved by a jury.
“In applying the Range of Vision Rule, under appropriate instructions from a trial court, a jury, as the finders of fact in a law action, would naturally consider the special circumstances shown by the evidence. * * * ” (Italics supplied)
While we can thus agree with the appellee that the lower court was not in error in refusing the requested charge, or the substance thereof, we nevertheless feel that the court should have more fully charged the jury on the rule laid down in Mathers, set forth above. It is true that the court generally charged on the duty to exercise due care, but in view of the admissions of the defendant’s driver that his vision'was obscured by the lights of oncoming vehicles, these were “special circumstances” which, we think, made it incumbent on the court to explain the rule in substantially the language of that case. Accordingly, we find it necessary to reverse.
Since this case is to be retried, we comment on appellant’s second point on appeal. We have carefully reviewed the record and find that the court properly charged the jury on the law relating to the legal responsibility of one whose physical or mental ability to detect or appreciate dangers is impaired.[9]
Reversed.
ALLEN, C. J., and HOBSON, J., concur.

. Egantoff v. Herring (Fla.App.2d 1965), 177 So.2d 260.

. It would serve no useful purpose to set forth the specific requested charge. In view of what we hold here, however, it would have been an erroneous charge as it was worded.

. See Ferlita and Sons, Inc. v. Beck (1940), 143 Fla. 509, 197 So. 340; City of Miami v. Saunders (1942), 151 Fla. 699, 10 So.2d 326; Petroleum Carrier Corp. v. Robbins (Fla.1951), 52 So.2d 666; Macasphalt Corp. v. Murphy (Fla.1953), 67 So.2d 438; and Cook v. Mason (Fla.App. 1st, 1961), 133 So.2d 428.

. See 22 A.L.R.2d particularly the annotations beginning on p. 300.

. e. g., “The duty to keep a vigilant lookout;” “the duty to observe that which is in plain sight;” and the “following too closely” rule.

. (1923), 86 Fla. 40, 97 So. 282, 32 A.L.R. , 881. See, also, approved jury instructions in Warner v. Ware (1938), 136 Fla. 466, 182 So. 605.

. Id. n. 6.

. See n. 3, supra.

. See Isenberg v. Ortona Park Recreational Center, Inc. (Fla.App.1st 1964), 160 So.2d 132.